**In the Matter of Harry Toussaint ALEXANDER, Respondent.**

No. 84–1160.

District of Columbia Court of Appeals.

Argued May 17, 1985.

Decided July 31, 1985.

Before PRYOR, Chief Judge, FERREN, Associate Judge, and GALLAGHER, Associate Judge, Retired.

ORDER

PER CURIAM:

This disciplinary matter is before the court on the recommendation of the Board on Professional Responsibility (the Board) that respondent be suspended from the practice of law in this jurisdiction for a period of two years. In excepting to the Board's Report and Recommendation, respondent raises several contentions, arguing principally that the Board's findings are not supported by substantial evidence of record. Respondent also submits that (1) action taken by the designated Hearing Committee was untimely and, consequently, prejudicial, (2) consolidation of the cases against him was improper, (3) the Hearing Committee and the Board were motivated by "racial, personal, or political discrimination" against him, and (4) the sanction recommended by the Board was inappropriate. Finding no merit to these contentions, we accept the Board's findings and adopt its recommended disposition as set forth in the Board's Report and Recommendation, which is appended hereto and incorporated herein by reference.[1]

In maintaining that the Board's factual findings are not supported by substantial evidence, respondent challenges the standard of review of this court and the Board of questions decided by the Board's Hearing Committees. As we understand his argument, respondent would have the Board *and* this court affirm factual determinations by a Hearing Committee only if supported by "clear and convincing" evidence. Respondent's contention appears to be quite similar to that addressed by this

1. In so doing, we are agreeing with the Board's Report and Recommendation in all material respects.

court in *In re Smith*, 403 A.2d 296 (D.C. 1979). In that case, we set forth the following standard:

> [I]t appears that the Board, when reviewing findings of the Hearing Committees, employs essentially a "substantial evidence on the record as a whole" test. However, when making its own findings . . . it employs a "clear and convincing evidence" standard, since it is then, in essence, performing the same function as the Hearing Committee.
>
> D.C.App.R. XI, Sec. 7(3), which sets forth the role of this court in bar disciplinary activities, provides in pertinent part that "[i]n considering the appropriate order, the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record."

*Id.* at 302; *see In re Alexander*, 466 A.2d 447, 448 (D.C.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1680, 80 L.Ed.2d 154 (1984); *see also In re Fogel*, 422 A.2d 966, 968 (D.C.1980). We have scrutinized the Hearing Committee record and conclude that the Board's findings are supported by substantial evidence.

■ Respondent submits that the Committee hearings and its report to the Board were not timely under Board rules and, consequently, deprived him of due process. This issue, however, was not raised before the Committee (by exception or otherwise) or the Board. Therefore, under the authority of *In re Rosen*, 470 A.2d 292, 299 (D.C. 1983), and *In re James*, 452 A.2d 163, 168 (D.C.1982), *cert. denied*, 460 U.S. 1038, 103 S.Ct. 1429, 75 L.Ed.2d 789 (1983), we reject this contention.

■ It is further argued that the unrelated cases against respondent should not have been consolidated because of the prejudice resulting from their joinder. In this respect, respondent maintains that the Hearing Committee's consideration of the several dockets together prevented the fair disposition of any particular docket. We disagree. It is not at all uncommon for a committee of the Board to adjudicate in a single proceeding claims arising from unrelated cases. *See, e.g., In re Haupt*, 422 A.2d 768 (D.C.1980). Indeed, practical concerns call for such an approach where, as here, so many violations have been alleged by Bar Counsel. But more importantly, respondent has failed to demonstrate that he was prejudiced by consolidation for it is clear that the Hearing Committee independently examined the merits of each case.[2] The careful scrutiny of Bar Counsel's charges by the Hearing Committee—the Committee sustained only 12 of the 22 charges brought against respondent—attests to the fairness of the Board proceedings.

■ Finally, respondent argues that the sanction recommended by the Board is inappropriate.[3] D.C.App.R. XI, Section 7(3), provides in part that where the Board's findings are supported by substantial evidence of record this court "shall adopt . . . [its] recommended disposition . . . unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." Yet, while we strive "to achieve consistency in the disposition of disciplinary cases, each case must be decided on its own particular facts." *In re Sheehy*, 454 A.2d 1360, 1361 (D.C.1983) (en banc) (citations omitted). The two-year suspension of respondent recommended by the Board is neither inconsistent with our prior disciplinary decisions nor assailable on the basis of the findings. We agree with the Board's reasoning as set forth in its Report and Recommendation. Accordingly, it is

ORDERED that respondent, HARRY TOUSSAINT ALEXANDER, be and he

---

2. We note that although the Committee reported its findings in the several cases together, it actually decided them in small groups. The Committee conducted hearings on a few cases, decided them, and then moved on to a new set.

3. We dismiss as unsupported and wholly without merit respondent's contention that the Hearing Committee and the Board were motivated in this cause by "racial, personal, or political discrimination" against him.

hereby is, suspended from the practice of law in this jurisdiction for two years, effective 30 days from entry of this opinion. *See* D.C.App.R. XI, Sec. 19(3).

SO ORDERED.

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

| Docket Numbers: | | |
|---|---|---|
| | 82–80 | 84–81 |
| | 428–80 | 86–81 |
| | 448–80 | 168–81 |
| | 49–81 | 285–81 |
| | 55–81 | |

IN THE MATTER OF HARRY T. ALEXANDER

### REPORT AND RECOMMENDATION

This matter originally came before the Board on Professional Responsibility on the Reports of Hearing Committee Number Six, dated November 3, 1983, and Hearing Committee Number Eight, dated September 6, 1983. Following the amended[1] briefing schedule established on the date for oral argument, Respondent filed a motion seeking dismissal or in the alternative a remand of the Report of Hearing Committee Number Six. The Board granted that motion.[2] Hence, this opinion concerns only the Report of Hearing Committee Number Eight.

### Introduction

In the matters heard by Committee Number Eight, petitions charged various violations of Canons 1, 6, and 7, including: three instances of violating DR 1–102(A)(4) (conduct involving misrepresentation, deceit or dishonesty) (Docket Numbers 448–80, 84–81 and 168–81); five instances of violating

---

1. Respondent filed a motion dated January 24, 1984, seeking to postpone scheduled oral argument before the Board from January 26, 1984, to March 15, 1984. The gravamen of the motion was that Respondent had retained "new counsel", Jewel LaFontant, Esquire of the firm Vedder, Price, Kaufman, Kammholz and Day, on January 16, 1984, to petition for certiorari in the United States Supreme Court, in the case styled *In re Alexander,* No. M–120–82, and that on January 20, 1984, Respondent had retained Attorney LaFontant to represent him in the captioned matters. Hence, new counsel needed an opportunity to review the record before presenting argument. Because the parties had previously been notified of the hearing on January 4, 1984, and because Respondent had been represented by James B. Cobb, Esquire, the parties were requested to present oral argument on the motion to postpone on January 26, 1984. Attorney Cobb was additionally requested to be prepared to address the merits should the motion to postpone be denied. *See,* Letter of Chairman Snyder, dated January 25, 1984. Bar Counsel opposed the motion to postpone asserting that Respondent had waited until January 20, 1984, to retain new counsel, after having been notified two weeks earlier of the scheduled argument, and that the attorney (Cobb), who represented Respondent at the hearing committee level, was prepared to go forward. (Attorney Cobb had filed a brief on Respondent's behalf on November 30, 1983 ("Brief")). After oral argument on the motion in which Attorney Eugene Granof, LaFontant's co-counsel, urged postponement on Respondent's behalf, the Board denied the motion. Nevertheless, Attorney Granof was allowed to ascertain whether Respondent desired to have oral argument presented or to file a supplemental brief. Respondent chose to file a supplemental brief.

2. On March 19, 1984, Respondent filed a motion to dismiss the petition or in the alternative to remand the matter that had been heard by Hearing Committee Number Six on the basis that a conflict of interest affected that Committee's action. The motion asserted: (1) that the Chairman of Hearing Committee Number Six, Alan Novins, Esquire, knew or should have known that his law partner Martin Lobel, Esquire, was the complainant in Docket Number 168–81, which had been heard by Committee Number Eight during the period that Committee Number Six considered the matters in Docket Numbers 384–81 and 48–82; and (2) that Respondent was not aware of the apparent conflict until January 30, 1984, when Respondent's office manager noted that Messrs. Novins and Lobel were apparently law partners. Bar Counsel, arguing that Respondent had failed to make any challenges to the Hearing Committee members at the time of the hearing and that Respondent's motion failed to meet the standards set by the District of Columbia Court of Appeals in *Vann v. D.C. Board of Funeral Directors and Embalmers,* 441 A.2d 246 (D.C.1982), urged denial of the motion. By an order dated April 26, 1984, the Board vacated the report of Hearing Committee Number Six and remanded the matter for a new hearing.

DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice) (Docket Numbers 82–80, 448–80, 49–81, 55–81, and 168–81); two instances of violating DR 6–101(A)(2) (handling a legal matter without adequate preparation) (Docket Numbers 84–81 and 258–81); six instances of violating DR 6–101(A)(3) (neglect of a legal matter entrusted to him) (Docket Numbers 82–80 (twice), 428–80, 84–81, 86–81, and 258–81); four instances of violating DR 7–101(A)(1) (failing to seek the lawful objectives of the client) (Docket Numbers 82–80, 428–80, 86–81, and 258–81); one instance of violating DR 7–101(A)(2) (failing to carry out a contract of employment) (Docket Number 82–80); and one instance of violating DR 7–106(C)(5) (failing to comply with local customs or practice) (Docket Number 168–81). Hearings on the merits were conducted on March 18, April 26, August 3, and December 30, 1982. A hearing on sanction was held on March 3, 1983.[3] (Tr. designates transcript references; BX denotes Bar Counsel exhibits and HC Rpt refers to the Committee's Report.)

Before reviewing the individual dockets, we feel it appropriate to address Respondent's contention that the Board's standard of review (and that of the District of Columbia Court of Appeals) should be based on clear and convincing evidence. We reject the challenge to the constitutionality of Rule 12.6 of the Board's Rules. Essentially that Rule provides that we affirm the Committee's findings of fact if there is substantial evidence in the record as a whole sufficient to support those findings under the applicable standard of clear and convincing evidence. The other part of that Rule requires that the Board, when making independent findings of fact and conclusions, must make such findings by clear and convincing evidence. Our standard of review, substantial evidence on the record as a whole, reflects the Court-approved procedure for review of findings of fact, accords Respondents procedural due process, and allows the Board to review the determinations of the finders of fact and to recommend uniform sanctions. *See In re Smith*, 403 A.2d 296 (D.C.1979). We have reviewed carefully the recommendations of Hearing Committee Number Eight and have independently examined the record of these proceedings. From that perspective, we believe that substantial record evidence requires us to affirm the Committee's findings in ten instances and we believe that clear and convincing evidence supports our findings that establish Respondent's conduct constituted two other disciplinary code violations. Thus, there is evidentiary support for finding violations in twelve of the twenty-two separate violations charged.

### *Docket Number 82–80*
### *Facts*

The controlling facts in this two-count petition are not generally in dispute. Respondent was retained on September 12, 1978, by Thomasine Owens to represent her in two matters: (1) to represent her in a pending action in the Superior Court (*Owens v. Owens*, Case No. D–1981–78) seeking legal separation, child custody, support, alimony, adjudication of property rights, an anti-molestation injunction and attorney fees; and (2) to represent her on a contingent fee basis in an action against her husband for an alleged assault and battery. Mrs. Owens paid Respondent $400 toward the $800 fee that Respondent established.

Mrs. Owens' prior counsel had instituted the pending action by certified mail. Respondent's single attempt to effect personal service consisted of hiring a special process server who went to Mr. Owens' place of employment, Giant Food, in Landover, Maryland, at 5:45 p.m. on the day before

---

**3.** Respondent's trial counsel challenged the consolidation of the complaints before the Committee, alleging a prejudicial impact from hearing a litany of complaints. The Committee rejected the challenge. For the reasons set forth in our order in *In re Roundtree*, Bar Docket Numbers 409–77, *et al.*, dated May 25, 1979, we believe that joining of separate and distinct allegations for consideration by the Committee and the Board is proper. *See In re Smith*, 403 A.2d [296] 206 (D.C.1979).

the scheduled November 7, 1978, hearing. The process server certified that Mr. Owens had left for the day.

At Respondent's request, the November 7, 1978 date was continued until December 11, 1978. No other attempts were made to serve Mr. Owens. Mr. Owens' attorney answered the motion for temporary alimony and child support by special appearance asserting the court's lack of *in personam* jurisdiction and that there was no need for temporary support.

On December 11, 1978, both Mr. and Mrs. Owens and Mr. Owens' attorney were present for the hearing. Respondent, however, failed to appear. Mrs. Owens waited in the courtroom until the Judge had completed that day's calendar, but Respondent still did not appear or call the court. Respondent's secretary told Mrs. Owens later that Respondent had been in another trial on that day. On January 25, 1979, Judge Kessler entered an order dismissing Mrs. Owens' motion for temporary alimony and child support for lack of jurisdiction.

Mr. Owens' attorney, Edward Skeens, Esquire, wrote to Respondent on October 31 and December 12, 1978. The October 31 letter renewed a settlement offer that Mr. Skeens had made to Mrs. Owens' former attorney, and the December 12 letter advised Respondent that Mr. Owens would discontinue making the monthly mortgage payments on the home in which Mrs. Owens resided but would continue to make weekly child support payments so long as their daughter was not employed and lived with Mrs. Owens. Respondent's answer to the petition denied receipt of the letters. However, Respondent did not testify at the hearing nor did he challenge the statements of Mr. Skeen that the letters had in fact been mailed to Respondent's address and were not returned. The holder of the mortgage on the family home advised Mrs. Owens in January 1979 that the prior month's payment had not been made and that two months' payments were then due. On August 14, 1979, Mrs. Owens wrote to Respondent complaining of inaction on the matters that he was handling for her. On August 23, 1979, Mrs. Owens signed a bill of complaint for absolute divorce, custody and child support that Respondent had prepared for filing in the Circuit Court of Prince George's County, Maryland. On September 4, 1979, Respondent sent Mrs. Owens a financial statement form to be completed for the Maryland court, and on November 23, 1979, Respondent sent her a letter requesting $115 for filing and related fees.

However, on February 1, 1980, Mrs. Owens told Respondent that she wanted the action filed in the District of Columbia and Respondent indicated that he would take care of it. Mrs. Owens testified that she understood Respondent's remarks to mean that a divorce action would be filed in the District of Columbia. Respondent took no further action, despite Mrs. Owens' letter dated July 24, 1980, requesting Respondent to outline what he intended to do to complete her case.

*Discussion*

Under Count I, Bar Counsel charged Respondent with violating DR 6–101(A)(3) (neglect), DR 7–101(A)(1) (failing to seek lawful objectives of the client), and DR 7–101(A)(2) (failing to carry out the objectives of a legal employment contract). The Committee found that the evidence did not support findings that DR 7–101(A)(1) and (2) were violated, but found that Respondent was guilty of neglect in violation of DR 6–101(A)(3). We affirm the Committee's findings.

Respondent challenged at the hearing, and subsequently asserts that his actions should not be faulted because they merely reflected litigation strategy. (Tr. at 91 and Suppl.Brief at 9.) However, those comments are misguided. First, there is simply no credible evidence in the record to suggest that Respondent's failure to pursue Mrs. Owens' case was based upon any conscious strategic judgment. Second, the bulk of Respondent's "evidence" on this point consisted of attacks on Mrs. Owens'

character and motivation, *see* Tr. 59, 62, 91–93, which are simply irrelevant to the charges against Respondent. He accepted representation of a client who wished to pursue a D.C. case. He undertook to perfect service, but then he immediately abandoned the effort without any meaningful consultation with, or consent from, the client.

Respondent accepted the representation of Mrs. Owens knowing that a defect in service existed and had to be cured. To effect service, he belatedly had a special process server attempt to serve Mr. Owens only once, the day before the scheduled hearing. There is no indication that the process server learned of Mr. Owens' hours of duty at Giant or any other meaningful information that might have assisted in serving Mr. Owens.

Moreover, Respondent elected to go forward at the rescheduled hearing knowing that the court did not have jurisdiction. To further aggravate matters, Respondent failed to appear at the December 11, 1978 hearing without notifying the court or his client. Respondent, when requested to re-file the matter in the District of Columbia, agreed to do so. However, he then made no effort to file the domestic relations case. Consequently, the Committee was justified in finding that Respondent violated DR 6–101(A)(3).[4]

On the other hand, the record does not support a finding that DR 7–101 was violated, which requires evidence of intentional misconduct. The paltry sum of Respondent's actions in Mrs. Owens' behalf weighs heavily toward a finding that Respondent intentionally failed to carry out a contract of employment and that he intentionally failed to seek the client's objectives; however, the Committee was in a better position to balance Respondent's explanations, to judge the demeanor of the witnesses and to ascertain whether the lack of activity could have established the requisite intent. On this record, it appears to be a close decision, and since the Committee apparently found that the evidence precluded finding violations of DR 7–101, we are inclined to agree.

### Count II

On November 6, 1978, Respondent filed an action captioned *Owens v. Owens*, C.A. No. 11826–78, in the Superior Court seeking relief for his client based upon an alleged assault and battery. At Respondent's request, the trial scheduled for January 24, 1980, was continued to June 13, 1980, and a settlement conference was set by the court for May 15, 1980. Prior to the conference, Mr. Skeens, counsel for defendant, filed a settlement statement with the court and mailed a copy to Respondent. Respondent did not file a settlement statement, nor did he appear at the conference. After contacting Respondent's office and another location suggested by Respondent's office, Judge Stewart granted defendant's motion to dismiss the action. (Tr. 78–9)

Claiming he had not received the court's notice of the settlement conference, Respondent filed a motion on May 19, 1980, to vacate the dismissal. That motion was granted on August 20, 1980, by Judge McArdle who also ordered Respondent to pay $250 counsel fees to defendant's attorney. An appeal of that order was *sua sponte* dismissed by the District of Columbia Court of Appeals for lack of jurisdiction. Respondent paid the $250, and Mrs. Owens' action was reinstated. (HC Rpt. at 10)

Although Mrs. Owens gave Respondent the names of two potential witnesses for the assault and battery action she claimed

---

4. The Committee concluded:

Thus, in two years Mrs. Owens made no progress in her objective of obtaining a divorce, property settlement, and a support order. In fact, during Respondent's representation her situation worsened because her husband stopped making the monthly payments on the house and support payments for their daughter. While the daughter had attained majority, the loss of those payments reduced Mrs. Owens' means and was relevant to her desire to obtain alimony. (HC Rpt., at 13–14.)

that Respondent failed to contact them (Tr. 51) and that she authorized the Yater Clinic to release records concerning her treatment. (Tr. 50) Respondent's answer asserted that it was his understanding that Mrs. Owens would request the records herself. (Ans. at para. 16)

### Discussion

On this evidence, the Committee found neither a violation of DR 1–102(A)(5) (conduct prejudicial to the administration of justice) nor DR 6–101(A)(3) (neglect). We reluctantly agree.

Since the evidence presented does not show conclusively that Respondent knew, or had reason to know that the settlement conference was set for May 15, 1980, we cannot say that clear and convincing evidence would support a finding that Respondent's failure to appear reflected conduct prejudicial to the administration of justice and neglect. There are some indications that Respondent should have known that the settlement conference was scheduled for May 15, 1980. The evidence shows that the opposing counsel mailed a proposed settlement statement to Respondent's address as stated on the complaint, that it was not returned and that Respondent obtained a continuance of the matter which resulted in the settlement conference being set for May 15, 1980, and trial for June 13, 1980. The missing link, which we are unable to establish, is that Respondent knew or had reason to believe that the settlement conference was set for May 15, 1980. Measured against Respondent's claim that he was having trouble receiving his mail, we believe that additional evidence, not provided the Committee, could have provided the basis for a different finding in this regard.[5] *See In re Marshall,* Docket Number 81–80

(BPR April 26, 1983). Similarly, we accept the Committee's finding in Respondent's favor with respect to the explanations regarding the manner in which the medical evidence was to be obtained and his views regarding the choice of witnesses.

### Docket Number 428–80
### Facts

On January 19–21, 1981, Mr. Donald Rector was tried and convicted of first-degree burglary and petit larceny. At the trial, Mr. Rector was represented by Douglas Wood, Public Defender Service. (Tr. at 157) Following conviction, Respondent was retained on or about March 25, 1981, to represent Mr. Rector. Respondent entered his appearance, filed a memorandum in aid of sentencing, and requested a continuance of sentencing. (HC Rpt. at 17) On April 6, 1981, Mr. Rector was sentenced to nine months for burglary and nine months for petit larceny, the sentences to run consecutively and both to be served on work release.

At the disciplinary hearing, Mr. Rector asserted that Respondent was retained to appeal the conviction. (Tr. at 125) Respondent maintained that he was retained for sentencing only. (Tr. at 165–66) Nevertheless, Mr. Rector was satisfied with the sentence as imposed. (Tr. at 132)

### Discussion

The Committee found that violations of DR 6–101(A)(3) and 7–101(A)(1) were not established because the petition was premised on the theory that Respondent was retained to pursue an appeal. (HC Rpt. at 19) The Committee resolved the conflict in testimony as to the scope of Respondent's

---

**5.** MR. ALEXANDER: Your Honor please. I moved over a year ago, and I still have some trouble receiving mail. I'm not saying it's the fault of 1100 6th Street, Northwest, but if he sent it to a wrong address, a number of things could have happened. The people could have never sent it back, the postman could never have picked it up, it could never have been redeposited in a mail box. When it got back to the—I used to be a postal clerk—and when it got back to the post office, it may have been misdirected, missent or resent to the wrong place, where counsel sent it.

THE COURT: All right, I'll grant the Motion on payment of $250. (Respondent's Ex. F. pp. 10–11)

retention in Respondent's favor.[6] Because we believe that evidence of record supports that determination, we affirm.

### Docket Number 448-80

### Facts

On February 25, 1981, Respondent entered his appearance as counsel for Mr. Sidney Jackson, who was charged with driving while intoxicated. A status hearing was scheduled for March 17, 1981, and trial was set for April 21, 1981. (HC Rpt at 20) Respondent requested and was granted a continuance of the status hearing to March 31, 1981, and the trial date to May 12, 1981. On March 31, 1981, the status hearing was held and the matter was then scheduled for trial on May 12, 1981.

On May 7, 1981, a request for continuance was filed reflecting an unopposed request for continuance over the signatures of Respondent and Barbara Brown, Esquire Assistant Corporation Counsel. After each signature the initials "pcm" appeared. On May 9, 1981, that request was granted. Because the court docket contained the notation "no further continuances," Judge Murphy set a trial date for July 6, 1981, (the earliest convenient date) and also noted "no further continuances."[7] (Tr. at 225)

Although the Office of Corporation Counsel filed a motion to expedite, the rescheduled trial date could not be advanced due to existing obligations of the court and opposing counsels. (Tr. at 247) However, testimony at the hearing on that motion before Judge Murphy was quite revealing. Respondent's associate stated that he believed that the Corporation Counsel would consent and therefore instructed that the form requesting continuance reflect both signatures.[8]

### Discussion

The Committee found that the facts did not establish a violation of DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation). While there was a lack of consent to the continuance, there was some confusion as to why consent was indicated. (HC Rpt. at 22) The record herein does not show by clear and convincing evidence that Respondent intentionally filed a motion for continuance asserting the consent of opposing counsel when he knew this was not the case.

On the other hand, it is clear that the goal that Respondent's assistant sought—continuance of the matter—was sought at Respondent's direction and that Respondent's Office Manager had the apparent authority to sign his name and that of opposing counsel on the form. Such apparent authority existed and yet Respondent had not taken reasonable steps to assure himself that the matter was uncontested. (Admitted in Respondent's Answer to Petition) Consequently, Respondent's misconduct occurred through lack of supervision,[9]

---

6. While there is evidence in the record that Mr. Wood continued to prepare for and submitted to the court documents favorable to Mr. Rector following trial (Tr. at 158–160), the Committee could have credited Respondent's testimony relating to the fee for an appeal as contrasted with that for sentencing. (Tr. at 173–177) Bar Counsel argues that Respondent's failure to discuss the right of appeal constitutes neglect or failure to achieve the client's lawful objective. On the other hand, Mr. Rector indicated his satisfaction with the sentence obviating any objective in appealing from the client's perspective, and the court advised Mr. Rector of his appeal rights.

7. A representative of the Corporation Counsel's office objected to the continuance, citing the presence of their witnesses, Corporation Counsel's readiness for trial, and the lack of mutual consent for the continuance. (Tr. at 226)

8. At the hearing on the motion to expedite Patrick Patrissi, Esquire, Respondent's associate, testified that he instructed that the name of Barbara Brown be signed on the motion. (Bar Exhibit 214 at 23, 24) Respondent's former Office Manager, Patricia Concitta Merritt, said that she overheard a conversation between her secretary and Ms. Brown and based thereon affixed the signature of Brown and Respondent.

9. The Committee relied upon the broad sense of the term "administration of justice" as found in D.C.App.R. XI, Section 2.

and therefore he cannot rely on an alleged failure of communication between himself and the opposing attorney. Judge Murphy's order left little doubt as to his view of Respondent's conduct:

The court need not resolve the credibility question between the Assistant Corporation Counsel and counsel's [Respondent's] secretary because counsel has displayed such an irresponsible approach to the conduct of his office affairs that the motion [to expedite] should be granted. The practice of any attorney, in a contested matter, of consulting opposing counsel via office staff is dubious at best. To permit a supervisor to sign another attorney's name without permission is indefensible; to permit a supervisor to represent opposing counsel's consent in a contested matter (based on hearsay from staff) is wrong. To fail to comply with the court rule [a copy of the motion was not served on the Corporation Counsel] and thus lull opposing counsel into the belief a case will go forth on the trial date is reprehensible.

(BX 201 at 3)

Accordingly, we agree with the Committee that the failure "to correctly state the position of the parties ... and have his opponent thereafter prepare and appear with witnesses for a trial which had been continued" constitutes a violation of DR 1–102(A)(5) (conduct prejudicial to the administration of justice).

Respondent's supplemental brief suggests that the Committee's rationale amounts to "no fault liability" and that a violation cannot be based on these facts without a showing that Respondent's conduct was unreasonable under the circumstances. (Suppl. Brief at 10) However, we conclude that the record shows that Respondent's conduct here was unreasonable. In addition, the Committee found that Respondent sought the first continuance as a result of lack of discovery and that despite the Judge's notation at that time to grant "no further continuances," another continuance was sought. But Respondent sought this continuance in a slipshod fashion. He allowed a non-legal employee to sign for opposing counsel based on her having allegedly overheard yet another secretary having a conversation with counsel. This consent by triple hearsay is *per se* inadequate and unreasonable supervision. Compounding the lack of consent, Respondent did not serve the motion on opposing counsel as required. (HC Rpt. at 22) Thus, the Assistant Corporation Counsel who had prepared for the scheduled trial, was justifiably concerned. This lack of service directly reflects conduct prejudicial to the administration of justice. Respondent's arguments about an honest misunderstanding or improper management fails to recognize this error, as Respondent belatedly admitted.[10]

### Docket Number 84–81
### Facts

On March 16, 1981, Ms. Delores Robb retained Respondent to seek her reinstatement as a teacher with the District of Columbia Public School System and agreed to pay him $2,000. (Tr. 550–51, HC Rpt. at 36) Ms. Robb was receiving unemployment compensation at the time that she retained Respondent; she received a notice on April 3, 1981, of a hearing on April 13, 1981, regarding her eligibility for continued unemployment compensation because she had allegedly been terminated for cause. Ms. Robb sent Respondent the notice of the

---

10. Respondent, at least obliquely, recognized the failure to serve the Corporation Counsel when he appeared before Judge Murphy on the Motion to Expedite:

MR. ALEXANDER: Let me say at the outset, I apologize for the inconvenience caused by my staff. I apologize for the time which has been consumed this morning, roughly, disregarding the slightest interruption, about an hour. I regret having to bring five members that I employ of my staff into the courtroom on this matter. It is unfortunate that service was not had on the Government. Had that been done, I am confident we wouldn't be here today.

Hearing on Motion to Expedite BX 214, Respondent's Exhibit 1 p. 42.

hearing, called his office, and consulted with him on April 10, 1981, about the upcoming hearing.

Respondent instructed Ms. Robb and a potential witness to come to his office on April 13, 1981, at 8:30 a.m. They appeared and consulted with Respondent at his office as instructed. (Tr. at 552; HC Rpt. at 38) Respondent told them that a continuance would be sought and that they should go to the hearing. After the hearing had begun, Respondent's associate, Patrick Patrissi, appeared and requested a postponement, stating that Respondent was involved in a trial. The request for postponement was denied as untimely, and the hearing continued.

When Ms. Robb arrived at the hearing, Mr. Patrissi told her that the hearing was over and she left without entering the hearing room. The hearing officer issued a decision adverse to Ms. Robb, causing her to lose benefits in the amount of $1,960. Respondent filed an appeal with the Department of Employment Service and sought review by the District of Columbia Court of Appeals.

Because Ms. Robb was terminated on February 13, 1981, and Respondent was not retained until March 16, 1981, he was unable to file a grievance within the ten-day period as permitted by the collective bargaining agreement. Respondent compounded this situation by failing to request the reinstatement of Ms. Robb until June 25, 1981, more than three months after he had been retained. (HC Rpt. at 36) Respondent's letter of that date requested that the school system accept the filing of a grievance although untimely because Ms. Robb's emotional state had interfered with her communications and Respondent had only recently become familiar with the matter. (Tr. at 608, HC Rpt. at 37) After receiving the school system's denial of the untimely grievance, Respondent filed suit in Superior Court seeking a declaratory judgment alleging that the school system was in violation of its rules in denying Ms. Robb an opportunity for a hearing.

On July 22, 1981, Ms. Robb wrote to Respondent expressing dissatisfaction with his representation, especially his failure to appear at the unemployment compensation hearing. In his response, Respondent indicated that he was terminating the representation, charged Ms. Robb for five hours at $125 per hour and returned $1,375 of the $2,000 she had paid. (HC Rpt. at 40)

*Discussion*

Bar Counsel charged Respondent with violating DR 1–102(A)(4) relating to the misrepresentation in his letter of June 25, 1981, to the school system that he had only recently become aware of the matter, DR 6–101(A)(2) in failing to adequately prepare the subsequent litigation, and DR 6–101(A)(3) in failing to write the school system seeking reinstatement for more than three months and failing to appear at the unemployment compensation hearing.

The Committee found that Respondent's failure to protect Ms. Robb's right to a substantive hearing or to represent her interests at the hearing constituted neglect but that the other violations were not established.[11] (HC Rpt. at 40–41)

Respondent's supplemental brief argues that the Committee's finding of neglect cannot stand because it made no finding that Respondent agreed to represent Ms. Robb in the unemployment compensation matter prior to the evening of April 10 and that his efforts after that date were reasonable. These assertions strain credulity. Ms. Robb first consulted Respondent on March 16, 1981. Although that contact related to her termination, Respondent was subsequently put on notice of the unemployment compensation hearing by: (1) the notice of hearing from the Unemployment Compensation Board which Respondent re-

---

11. Bar Counsel does not contest those findings.

(Bar Counsel Brief at 25)

ceived on or about April 6;[12] (2) Ms. Robb's telephone call of April 3; and (3) Respondent's meeting with her on April 10, at which she indicated that she desired him to represent her at the hearing.

If Respondent could not have handled the April 13, 1981 hearing, it was his duty to advise Ms. Robb at the earliest possible time when she called for an appointment to discuss the matter.[13] He should not have scheduled an appointment with her on the eve of the hearing to consider whether to represent her. At any rate, Respondent advised her on Friday evening that he would be at the hearing on Monday morning. (Tr at 552) Because it was his decision to meet with her at this late date, he cannot argue that his only course was to request a continuance.[14] Ms. Robb was no stranger to Respondent on April 10. The basis of the unemployment compensation hearing concerned the reasons for Ms. Robb's termination; Ms. Robb advised Respondent on March 16 and 27, 1981, regarding the details of her termination for cause. (Tr. at 549–50) Accordingly, the Committee was correct in finding that Respondent's failure to protect Ms. Robb's substantive rights at the April 13, 1981 hearing, constituted neglect in violation of DR 6–101(A)(3).

Unlike the Committee, we further believe that Respondent's failure to communicate promptly with the school system to seek Ms. Robb's reinstatement constituted neglect. The Committee reasoned that, absent a showing that the three-month delay prejudiced Ms. Robb or that Respondent had any reason to believe at the time, that the three-month delay could have been prejudicial, there could be no basis for neglect. We do not believe that neglect turns on the

attorney's view whether there will be any prejudicial effect as a result of his inaction nor do we believe that prejudice plays a role in determining a violation of DR 6–101(A)(3). To find a violation of DR 6–101(A)(3) there need only be a showing that under the circumstances of the representation the attorney failed to diligently pursue matters in order to accomplish the aims of the representation.

In this case, Respondent did nothing from March 16 to June 25, 1981, to seek Ms. Robb's reinstatement. He realized when he agreed to represent Ms. Robb on March 16, 1981, that the ten-day appeal period had expired. (Ms. Robb's notice of termination was dated February 6, 1981, to be effective February 13, 1981.) Thus, her right to a due process hearing on the merits had passed. Because Respondent accepted this undertaking knowing that the school system's decision to terminate would likely require more than obtaining an administrative hearing on the merits and since some time had already elapsed prior to the initial consultation with the client, Respondent was required to act promptly. His letter of June 25, 1981, was filed about three months after he was first consulted by Ms. Robb. Inexplicably, the sole basis for requesting the school system's waiver of the 10-day rule in the collective bargaining agreement was the client's alleged inability to communicate—a fact he knew some three months earlier. Respondent's subsequent actions on Ms. Robb's behalf merely sought to correct the neglect caused by his failure to promptly act on Ms. Robb's behalf. The notice from the Board of Unemployment Compensation provided Respondent with an opportunity

12. Respondent's letter to Ms. Robb, dated July 28, 1981, indicated that he received the notice of hearing on April 6, 1981.

13. Since Respondent knew on April 6 that the Unemployment Compensation Board's hearing was scheduled for April 13, timely notification to Ms. Robb of his unavailability would have allowed her to retain new counsel.

14. Respondent waited until the hearing was in progress before dispatching his associate to the hearing to request a postponement. Respondent offers no explanation why he did not attempt to obtain a continuance during the weekend or, as a first priority, on Monday morning. The hearing officer indicated that there was no record of any attempt to notify his office late Friday or prior to the start of the hearing. (See BX 507, p. 3)

to indirectly challenge the termination for cause. Rather than protect Ms. Robb's interest on that occasion, his irresponsible actions allowed that opportunity to pass.

Ordinarily inactivity on a matter for three months, especially where the client has allowed the established period for automatic review to elapse, would not be basis for neglect. We believe this case is different primarily because Respondent's inactivity in Ms. Robb's representation indicated a careless disregard for achieving the client's goal of reinstatement. We cannot say that a request for waiver of the collective bargaining agreement's 10-day rule promptly filed upon being retained would have been approved, but we do believe that immediate attention by Respondent to Ms. Robb's goal could have uncovered a basis for direct challenge of termination and certainly could have provided for a respectable presentation at the Board of Unemployment Compensation. Consequently, it was Respondent's inactivity during this critical three month period (March 16—June 25, 1981) that leads to a finding of neglect. Accordingly, clear and convincing evidence supports the finding that DR 6–101(A)(3) was violated.

### Docket Number 49–81
### Facts

On June 23, 1981, Respondent appeared in Courtroom Number 17 of the Superior Court to represent his client in *United States v. Ramos*, Cr. No. F 3486–81. Before the arrival of the judge, Respondent, without permission, opened and read from the case file of the Assistant United States Attorney, which was located on the United States Attorney's counsel table at the front of the courtroom. (Tr. at 282) Respondent claimed that he was looking for the name of the Assistant United States Attorney who had recommended papering of the charge against his client. (Tr. at 300) However, he also stated that he had a right to look into opposing counsel's case file

since he alleged that he could have subpoenaed it. (Tr. at 303)

### Discussion

Respondent was charged with violating DR 1–102(A)(5) (conduct prejudicial to the administration of justice) and D.C.App.R. 46(h), failing to demean oneself uprightly.[15] The Committee failed to find a violation of DR 1–102(A)(5). We disagree.

DR 1–102(A)(5) does not specify nor catalogue particular conduct that is prejudicial to the administration of justice. Rather, it is a general rule that is purposely broad to encompass derelictions of attorney conduct considered reprehensible to the practice of law. When one considers the responsibility of an attorney as an officer of the court (D.C.App.R. XI, Sec. 2), it becomes clear that this duty and the concomitant responsibilities require decorum and conduct in keeping with the professional standards imposed upon licensure. This duty encompasses the requirement that attorneys follow the rules governing the conduct of advocacy. The rules of discovery would have allowed the release to Respondent of certain evidence in the custody of the United States Attorney. We reject as inherently incredible any suggestion by Respondent that he believed such rules allowed him to have unlimited and unilateral access to an opposing attorney's files. Accordingly, we find that Respondent's conduct violated DR 1–102(A)(5).

### Docket Number 55–81
### Facts

In the course of representing Alphonso Reed against a charge of driving while intoxicated, Respondent was adjudicated in contempt of court for his tardiness on a specific day of the trial and his failure to appear in a timely manner throughout the trial. Judge Gladys Kessler issued the contempt ruling on the fourth day of the trial, May 16, 1979. On that day, trial had been

---

**15.** Words exchanged between the Assistant United States Attorney and Respondent, supposedly portraying an ethnic basis on the part of Respondent, were the basis for this charge; the charge was withdrawn by Bar Counsel. (HC Rpt. at 28)

scheduled to resume at 9:15 a.m.; Respondent's law clerk called the judge's clerk at 9:27 a.m. to indicate that Respondent was handling a matter in the Landlord and Tenant Division of the Superior Court. At approximately 9:35 a.m., Judge Kessler dispatched her law clerk to summon Respondent to her chambers. When Respondent appeared, Judge Kessler asked him for an explanation. She ascertained that he had not been engaged in another trial, and then found him in direct contempt of court. (BX 402 at 3, HC Rpt. at 29–30)

### Discussion

It is beyond question that Respondent's failure to appear at the trial in a timely fashion violates DR 1–102(A)(5). Respondent owed a duty to the court, consistent with Super.Ct.Civ.R. 104, to appear for trial at the appointed hour. If Respondent had an exigent situation requiring his presence at another place, he had a duty first to obtain the permission of the court in which he was engaged in trial.[16] Respondent's supplemental brief does not dispute the application of DR 1–102(A)(5), rather it suggests that the contempt penalty should be "coupled with an admonition." (Suppl. brief at 11) While the appropriate sanction is discussed below, we hold that the imposition of contempt does not preclude the imposition of discipline for violating the Code of Professional Responsibility. *In re Bush (Bush I),* District of Columbia Court of Appeals, D.P.–22–75 (July 26, 1977); *In re Whitlock,* 441 A.2d 989, 991 (D.C.1982); *In re Thompson,* District of Columbia Court of Appeals, 478 A.2d 1061 (1984); *In re Daniel H. Brown,* Bar Docket Number 222–76 (BPR August 4, 1978). Therefore, we affirm the Committee's finding of a violation of DR 1–102(A)(5).

### Docket Number 86–81

### Facts

On April 9, 1979, Miss Mary L. Burns retained Respondent for a fee of $1,000, to assist her in effecting settlement on a contract for the purchase of a residence at 1000 Eye Street, N.E., Washington, D.C. After the contract of sale was signed, unknown persons removed the radiators and other components of the heating system from the premises. Miss Burns deposited $10,000 toward the purchasing price of $58,000. She was to assume an existing deed of trust (approximately $35,000), and the seller would take back a second trust for the remainder.

Although the contract indicated that the seller assumed the risk of loss to the property until settlement and contained a provision obligating the seller to replace storm windows and window glass, the seller wrote to Miss Burns advising her that he would not repair, or give her an allowance for, the heating system. Rather, the seller offered to rescind the contract and return her deposit. (BX 25 p. 6–18, HC Rpt. at 42–43)

At a settlement conference on April 10, 1979, which Respondent attended, the parties were unable to agree. (BX 17, HC Rpt. at 44) On April 11, 1979, Respondent filed an action in the Superior Court seeking injunctive relief that would have required the seller to convey the property after making the repairs and to prevent sale of the property pending resolution of the lawsuit. (BX 18, p. 6–8) On April 11, 1979, a temporary restraining order was denied, and a hearing on a preliminary injunction was scheduled for April 20, 1979. (HC Rpt. at 45)

On April 13, 1979, another settlement conference resulted in execution of the closing documents. At that time, Miss Burns stated that she was not relinquishing her claim for compensation for the repairs but would take title and let the court decide the repair issue. (HC Rpt. at 45) Although Respondent attended this settlement, he did not arrange in the settlement documents for a future determination re-

---

16. Respondent asserted that his absence did not cause a delay, but as the court noted in the order, had Respondent been present, the delay caused by the juror who was having car trouble could have been eliminated by use of an alternate juror. (BX 402 at 6)

garding the seller's contractual duty to repair the windows or heating system.

On April 17, 1979, Respondent, without advising Miss Burns and without her consent, withdrew the litigation that he had filed. (HC Rpt. at 45) After the settlement, Miss Burns made several calls to Respondent's office but was unable to speak with him. In addition, Respondent's office personnel did not give Miss Burns further information regarding her suit or when the repairs would be made.[17] (BX 25 at 17–18, 19–20, HC Rpt. at 46)

Miss Burns made monthly mortgage payments of $480—$350 fee for the first trust and $130 for the second. She discontinued the first trust payments in September or October 1980, and the second in March 1981. (BX 25 at 15, HC Rpt. at 46) In June or July 1981, Miss Burns received a notice of foreclosure and called Respondent to ascertain the status of the litigation but could not get any information. (BX 25 at 21, HC Rpt. at 46) However, she did learn the civil action number, went to the court, and learned that the lawsuit had been dismissed.

### Discussion

Respondent was charged with violating DR 6–101(A)(3) (neglect) and DR 7–101(A)(1) (failure to seek the client's lawful objectives). The Committee so found, and we agree.

Respondent challenges the sufficiency of the evidence, asserts that the Committee misunderstood the purposes for which Miss Burns retained Respondent, and questions the Committee's finding that Respondent should have advised Miss Burns about legal problems inherent in her course of ac-

tion. (Suppl. Brief at 14–15) None of these positions is persuasive.

The documentary evidence shows that at the time Respondent was retained, the seller was not willing to make the repairs as required by the contract. Miss Burns retained Respondent to resolve this impasse. Miss Burns not only wanted title, but she also wanted the property repaired in accordance with the contract. The fact that Respondent unsuccessfully sought a restraining order for that purpose is evidence that he understood her goal. It is Respondent's lack of activity after the temporary restraining order was denied that indicates neglect and abandonment. While there is no evidence that Respondent did anything to pursue her claim, or to seek damages,[18] less than a week following settlement, Respondent, without Miss Burns' knowledge or consent, withdrew the action he had instituted. The underlying complaint could have been amended or styled to accomplish the client's goal.

Respondent argues that without a new fee arrangement or new instructions it is hardly conceivable that Miss Burns believed that Respondent would undertake to do more than file for equitable relief and attend the settlement conferences. To the contrary, Miss Burns believed until she got the foreclosure notice in 1981 that the lawsuit was pending. If Respondent desired an additional fee, Miss Burns' calls afforded adequate opportunity to have further discussions along those lines. Consequently, the Committee properly found Respondent in violation of DR 6–101(A)(3) and DR 7–101(A)(1).

### Docket Number 168–81
### Facts

Complainant, Martin Lobel, Esquire represented Margaret C. White and Respon-

---

**17.** In April 1980, Miss Burns met with Respondent because she received a housing citation requiring her to board the windows within seven days. She testified that she said: "Look, it's been over a year and nothing has been done, and I now have to board it up...." Bx 25 at 19–20. Respondent was reported to have replied, "Mary, you've got to go there and board those windows up because, number one, you're

not going to have a court date before these seven days...." (BX 25 at 19–20)

**18.** New counsel for Miss Burns filed a breach of contract action for damages on April 8, 1982, as the supplemental brief notes, but that option was neither advanced nor counseled by Respondent.

dent represented the plaintiff, Joseph A. White in a divorce action styled *White v. White,* CA No. D–00363–80. On December 4, 1980, Respondent's secretary called Mr. Lobel seeking an extension of time for the trial scheduled for December 11, 1980, because the plaintiff would not be able to travel from California to Washington. Mr. Lobel refused, citing the expense and inconvenience incurred by himself and his witnesses, and was told that Respondent would be contacting him.

On December 8, 1980, Attorney Lobel called Respondent's secretary to ascertain what Respondent intended to do regarding the continuance. Respondent's secretary again requested an extension and Lobel refused again but indicated his willingness to discuss the possibility of settling the case on the merits. (BX 1, Lobel Affidavit. HC Rpt. at 49)

On December 10, 1980, in the Family Calendar Control Room of Superior Court, Respondent handed John E. Sweet, Deputy Clerk in the Superior Court of the District of Columbia, the Court file containing *White v. White,* a motion for continuance, and a proposed order. Respondent told Mr. Sweet in response to Mr. Sweet's query that the continuance request was by consent and pointed to the place on the form where the Assignment Commissioner's office had approved the hearing date. Mr. Sweet took the file to the clerk's desk at the front of the courtroom. The clerk, Mrs. Majorie White, also asked whether the continuance was by consent and Mr. Sweet replied that Mr. Alexander told him "yes, the request was by consent." (BX 1, Affidavit of Sweet and White; HC Rpt. at 50) [19]

Later that afternoon Lobel called Respondent's office and was informed that Respondent had filed a motion for continuance. Lobel then called the court to determine when the motion would be heard and learned that it had already been approved.

Although the certificate of service on the motion indicated that Mr. Lobel was personally served on December 10, 1980, he did not receive his copy, by mail, until December 12, 1980.

### Discussion

The Committee found that Respondent's conduct constituted a violation of DR 1–102(A)(4) by representing that the motion was by consent constituting deceit and misrepresentation; a violation of DR 1–102(A)(5) in that failing to notify opposing counsel adequately prior to seeking a continuance was conduct prejudicial to the administration of justice; and a violation of DR 7–106(C)(5) in that Respondent's handling of the continuance request constituted a failure to comply with known local customs of courtesy of the Bar. We affirm the Committee's findings.

Respondent's Brief and the Supplemental Brief seek to undermine the Committee's findings and conclusions on two principal grounds. First, Respondent asserts that there is insufficient evidence upon which the Committee could have found that Respondent violated DR 1–102(A)(4), DR 1–102(A)(5) and DR 7–106(C)(5). Second, Respondent argues that the Committee's failure to recognize that conflicting versions of significant events were presented and to provide its explanation why one version was accepted constitutes a fatal flaw.

In findings numbered 3–18 (HC Rpt. 49–52), the Committee made specific findings of the relevant facts and events pertaining to the alleged violation. With minor exceptions, the Committee either specifically referred to evidence in the record, including Bar Counsel's exhibits and the transcript of the hearing, or made findings based on record evidence without specifically alluding to such evidence. The exceptions were findings numbered 13, 17, and 18. A review of the relevant evidence shows that

---

**19.** Mr. Sweet noticed that the motion was not in the form usually used by the Family Division and Mrs. White noticed that Respondent had signed the request, "Counsel for Defendant," when he was actually counsel for plaintiff. But Respondent departed the courtroom before Mrs. White could inquire about this "typographical error." (Comm.Rpt. at 50)

there is an adequate factual basis of clear and convincing evidence to support those findings. Lobel's affidavit forms the basis for finding number 13; Mr. Sweet's testimony, accepted as an operative fact in finding number 7, constitutes the basis for findings number 17 and 18. Thus, Respondent's claim of insufficient evidence lacks merit.

Respondent's second challenge to these findings is likewise unpersuasive. Essentially, Respondent argues that the Committee, as finders of fact must not only recognize explicitly issues of credibility but must also give reasons why one conflicting version is rejected. In Respondent's view, the failure to do so denies effective review. While we believe it is important for the Hearing Committees to recognize explicitly Respondent's contentions and where appropriate comment thereon, we do not believe the finders of fact are required to do so in every instance. However, we believe that it is better practice for the Committee to recognize explicitly conflicts in its development of findings of fact especially when Respondents' versions are not accepted. We note parenthetically that in its discussion of Docket Number 428–80, HC Rpt. at 18–19, the Hearing Committee explicitly recognized the conflict in testimony. Thus, it is clear to us that the Hearing Committee recognized the conflict in its review of the evidence.

We do not, however, believe that the Committee is required to address specifically all of Respondent's contentions. As the United States Court of Appeals for the District of Columbia Circuit stated in *Schilling v. Schwitzer-Cummins Co.*, 79 U.S.App.D.C. 20, 22, 142 F.2d 82, 84 (1944), with regard to findings under Fed.R.Civ.P. 52:

A decision, as between two contestants, necessarily rejects contentions made by one or the other.... Certainly, we should not require or encourage trial judges, in preparing findings, to assert the negative of each rejected contention

as well as the affirmative of those ... [found] correct. [Emphasis in original.]

Rather, we too, believe that it is absolutely essential that the affirmative evidence be found and that the evidence support the conclusion that the Committee reached. Because the findings in this docket contain the relevant facts upon which the conclusions regarding these violations were found, and since the review of evidence leads us inescapably to the same conclusions, the Committee's findings and conclusions are affirmed.

In summary fashion, Respondent denied indicating to Mr. Sweet, courtroom clerk, that the Motion for Continuance was by consent and there was a conflict in the evidence regarding personal service of a copy of the motion. Mr. Sweet's and Mr. Lobel's testimony were in opposition to Respondent's contentions. The record contains additional evidence not cited by the Committee which supports the Committee's acceptance of the version of events adverse to Respondent. With respect to the Sweet conflict, the Committee could have alluded to Lobel's letter of December 3, 1981 (BX 3), in which Respondent was alleged to have stated in a hearing before Judge Goodrich that "he meant that the Assignment [sic] Commissioner had consented, not that I [Lobel] had consented." Moreover, the Committee could have found that Respondent's staff sought unsuccessfully to file the Motion for Continuance on December 9, 1980. *See* Respondent's testimony at Tr. 461 and November 30 brief at 3. While these facts were not found by the Committee, they are added reasons for crediting the Committee's views of the evidence and its findings. As to the other alleged conflict regarding service, Respondent's only contention was not whether he or his assistants personally "delivered" a copy of the motion to Mr. Lobel but whether Mr. Lobel sent a messenger to Respondent's office *after* learning that the motion had been filed and granted. We do not find this alleged conflict worthy of further comment.

Finally, Respondent asserted that Mr. Lobel knew that he intended to file the Motion for Continuance as early as December 4, 1980, and therefore he could not have violated DR 1–102(A)(5) nor DR 7–106(C)(5). However, there is no basis for the conclusion that Respondent was preparing or filing a Motion for Continuance based solely on the telephone call from Respondent's office. In fact, Lobel indicated to Respondent's office his opposition to a continuance. Respondent's pursuit of a continuance with the knowledge of likely opposition and his failure to affirmatively notify opposing Counsel of its filing clearly violated DR 1–102(A)(5) and DR 7–106(C)(5). Accordingly, the Committee's findings are supported by clear and convincing evidence.

### Docket Number 285–81

#### Facts

In June 1979, John H. Dickerson was dismissed from his job as a probation officer in the Superior Court. He subsequently retained Respondent in the matter and paid him a $1,000 retainer fee. On June 22, 1979, Respondent appealed the termination to the United States Merit Systems Protection Board (MSPB). The MSPB notified Respondent by letter dated July 30, 1979, of a hearing in the Dickerson matter set for August 22, 1979. The notice stated that, absent unusual circumstances, no motion for a continuance filed after August 9, 1979, would be considered.

On August 14, 1979, Respondent submitted an affidavit requesting a continuance. The motion was granted, rescheduling the hearing for September 7, 1979. Opposing counsel then requested and obtained a continuance to September 14, 1979. The order granting the continuance noted that because the hearing official's report was due within 120 days, absent extraordinary circumstances, no further postponement would be granted.

On September 10, 1979, Respondent filed a motion for a further continuance from September 14 to September 17, 1979, because he was scheduled to appear in another matter in Superior Court. That motion was denied. On September 14, 1979, Respondent appeared for the hearing and asked for reconsideration of the denial, which was refused. Respondent then moved for Presiding Official Boyle's disqualification, citing her alleged bias and prejudice in denying his motion. The official refused to recuse herself and stated her intention to proceed with the hearing. Respondent stated that he would not participate and left the hearing room. No evidence was presented on Dickerson's behalf.

On October 10, 1979, Presiding Official Boyle denied the agency's motion for dismissal of the appeal for failure to prosecute and allowed the record to remain open until October 23, 1979. Respondent did not submit any evidence during that period. (HC Rpt. 54–56)

On October 24, 1979, Presiding Official Boyle issued a decision which dismissed three of appellant's contentions and indicated that although the fourth was "... germane to any determination whether removal on the basis of the sustained charges was warranted, the appellant submitted no specific information for me to consider." (BX 20 at 6. HC Rpt. at 57) That decision was upheld by the MSPB and the United States Court of Appeals for the District of Columbia Circuit. (BX 25) Respondent subsequently filed an unsuccessful action in the United States District Court challenging the MSPB regulation that required MSPB field offices to issue initial decisions within 120 days.

#### Discussion

The Committee found that Respondent's conduct constituted a violation of DR 6–101(A)(2) in that he did not adequately prepare for the hearing; a violation of DR 6–101(A)(3) (neglect); and a violation of DR 7–101(A)(1) (intentional failure to seek his client's lawful objective). We concur with the Committee's findings regarding a violation of DR 6–101(A)(3) and DR 7–101(A)(1)

but reject the finding of a violation of DR 6–101(A)(2).

The Committee's decision regarding neglect and failure to seek the client's objective are supported by the requisite clear and convincing evidence in the record. Both violations flow from Respondent's failure to present Mr. Dickerson's case at the September 14, 1979 hearing and his failure to submit evidence in support of his client's position during the period October 10–October 23, 1979.

At the hearing Respondent contended that he did not have an option whether to represent his client at the September 14, 1979 hearing because he was involved in a trial, *Rush v. Rush*,[20] in the Superior Court on the same day. (Suppl. Brief at 18) Respondent realized when filing the motion for continuance that the presiding official had previously notified both parties that further continuances would probably not be granted. Despite this notice, Respondent filed the motion for continuance on September 10, 1979. The motion was denied by order dated September 11, 1979. Consequently, Respondent gambled that a reconsideration motion or an interlocutory appeal would serve the same purpose. However, it is this course that denied Respondent's client the right to a hearing.

The subsequent flurry of activity, so properly discounted by the Committee (HC Rpt. at 59), sought merely to amend Respondent's error. Compounding the error, Respondent failed to submit any documentary evidence in support of the petition for review during the period October 10–October 23, 1979. Consequently, the Committee was justified in finding violations of DR 6–101(A)(3) and DR 7–101(A)(1).

Respondent also contended that Mr. Dickerson participated in Respondent's decision concerning how to proceed before the MSPB and accepted that strategy and the appeals that followed. However, this contention lacks merit. First, Respon-

dent's client was neither fully aware of the ramifications and risks that course of action contained nor was he apprised of Respondent's earlier requests for continuances. Second, it was the Respondent's duty to protect Mr. Dickerson's right to a hearing and to present zealously the appeal of the termination. Consequently, the client's alleged agreement would have been based on what he presumed to be Respondent's concern about Mr. Dickerson's best interests. When events proved this reliance unjustified, the instant complaint was filed.

The Committee also believed that the evidence supported a finding of a violation of DR 6–101(A)(2) (inadequate preparation). However, a careful review of the record does not support that determination. There is evidence that some preparation was done (Tr. at 668–674) and there is Ms. Perkins' testimony that Respondent could have proceeded on that day. (Tr. at 666–7) On the other hand, there is some support for the view that Respondent was not prepared to conduct the hearing but was prepared solely to seek a continuance. (Tr. at 637–639) However, the evidence is not so clear-cut that a dispositive finding on that issue could be supported without having the Committee's rationale, which is not set forth in its report. Thus, we reject the Committee's finding that Respondent's conduct constituted a violation of DR 6–101(A)(2).

### Sanction

Respondent has violated Canons 1, 6, and 7 as follows: five instances of violating DR 1–102(A)(5) (conduct prejudicial to the administration of justice)—Dockets 448–80, 49–81, 55–81, and 168–81; one instance of violating DR 1–102(A)(4) (deceit and misrepresentation)—Docket Number 168–81; three instances of violating DR 6–101(A)(3) (neglect)—Docket Numbers 84–81, 86–81 and 285–81; two instances of violating DR 7–101(A)(1) (failure to obtain client's lawful

---

**20.** We note that Respondent's Office Manager, Ms. Perkins, testified that the *Rush v. Rush* trial (Tr. at 666) did not proceed on that day; how-

ever, the testimony did not reveal how or at what time the decision not to proceed was made.

objective)—Docket Numbers 86–81 and 285–81; and one instance of violating DR 7–106(C)(5) (failure to follow local custom) —Docket Number 168–81. We affirmed the Committee's determinations except as noted above in Ramos, Robb, and Dickerson, finding violations in Ramos and Robb which were not recommended by the Committee and rejecting one finding of a violation in the Dickerson matter.

The Committee considered each docket separately and recommended six-month suspensions for each of the seven matters. We also believe that Respondent's conduct warrants a lengthy suspension and recommend that Respondent be suspended for a period of two years.

Respondent's supplemental brief urges that no sanction in excess of six-months' suspension is warranted. Respondent's supplemental brief gives no consideration to his prior discipline, and asserts that none of the violations found by the Committee involved "any assault on the integrity of Respondent" that would likely cause suspensions in excess of one year. (Suppl. Brief at 27) Respondent's "lapses" or errors, it is asserted, were caused by over-extensions, which were unintentional and are regretted. Further, Respondent notes his long career as a lawyer and judge and that he has improved his office organization and operation. Clearly, indications of prior service and contrition are factors that can be considered in mitigation. However, the record does not support the view that Respondent's integrity is beyond question, and the court has imposed suspensions in excess of one year for repeated violations of Canons 1, 6, and 7. *In re Willcher*, 404 A.2d 185 (D.C.1979).

Respondent previously has been disciplined by three informal admonitions, one on September 4, 1980, and two on January 9, 1981. Also, in *In re Alexander*, 466 A.2d 447 (D.C.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1680, 80 L.Ed.2d 154 (1984), the District of Columbia Court of Appeals suspended the Respondent for three months based on his neglect in handling one client's case and conduct prejudicial to the administration of justice where he failed to make obligatory court appearances in another client's case.

In determining sanctions, matters in aggravation as well as in mitigation may be considered by the court. *In re Haupt*, 422 A.2d 768, 771 (D.C.1980). Prior discipline is an important consideration in the assessment of the appropriate sanction. *In re Fogel*, 422 A.2d 966, 968 (D.C.1980); *In re Vogel*, 382 A.2d 275, 282 (D.C.1978); *Schullman v. State Bar of California*, 16 Cal.3d 631, 635, 128 Cal.Rptr. 671, 673, 547 P.2d 447, 449 (1976); *Maryland State Bar Association, Inc. v. Phoebus*, 276 Md. 353, 363–66, 347 A.2d 556, 562–63 (1975).

The repetition of instances of misconduct shown by the records in these matters before this Board go hand-in-hand with Respondent's refusal to recognize the impropriety of his conduct. That refusal cannot be ascribed to a lack of experience or knowledge. Moreover, Respondent has ignored the clear warnings of the informal admonitions which were issued for conduct similar to that involved here. Despite the issuance of the last two admonitions on January 9, 1981, Respondent did not change course. The misrepresentation and neglect while Respondent was responsible for helping Ms. Robb (Docket 84–81) occurred in the spring of 1981; his actions in indicating the Corporation Counsel had agreed to a continuance (Docket 448–80); and the unauthorized reading of a confidential file of the United States Attorney (Docket 49–81) took place in June 1981. Apparently Respondent appears determined to continue to ignore his professional responsibilities.

In general, most of the misconduct arose out of Respondent's disregard for the interests of his clients as evidenced by neglect of the matters entrusted to him and by his deliberate refusal to go forward with cases (Dockets 82–80, 428–80, 86–81, and 285–81). In addition, Respondent displayed contempt for the orderly administration of justice by inexcusable failures to make timely appear-

ances before courts (Dockets 82–80 and 55–81), by obtaining a continuance of a court matter through misrepresentations of facts (Dockets 168–81), and by viewing without permission a confidential case file of the United States Attorney (Docket 40–81). The misconduct established by the record in these cases is not merely the product of disorganization or inadvertence. Nor is it attributable to being a sole practitioner. The Respondent has demonstrated a defiant attitude toward his clients, his adversaries, and the courts. He has placed his personal convenience above the proper representation of his clients and the requirements of our adversary system of justice.

Because we view neglect as the prevailing theme of most of these violations, we look to prior decisions on neglect for guidance. Neglect aggravated by other violations has resulted in suspensions in excess of one year. *Haupt, supra* (attorney's extreme neglect, deceit, and misrepresentation mandated three-year suspension); *Fogel, supra* (attorney suspended for one year and one day for neglecting client's appeal and making misrepresentations to client and court regarding appeal); *Smith, supra* (attorney received eighteen-month suspension for neglecting two civil matters and making misrepresentations to his clients about the cases); *In re Lawrence Smith*, No. M–91–81 (D.C.1982) (attorney suspended for a year and a day for neglecting matters involving four different clients, intentionally failing to seek lawful objectives of clients and to carry out contract of employment, and failing to respond to Bar Counsel's inquiry).

In *Matter of Sheehy*, 454 A.2d 1360 (D.C. 1983), the court considered the Board's recommendation of disbarment for the following misconduct: the attorney through inept handling and neglect permitted the statute of limitations to run on a personal injury claim. After a further lapse of time, the attorney falsely told his client that he had received an offer of settlement for $1,200. He then made a disbursement to his client on that basis. In the course of an inquiry by Bar Counsel, Sheehy repeated the fictitious story about the settlement, but after being asked to provide details he admitted that there had been no settlement and that he had paid the client from his own funds. Sheehy previously had received a reprimand for neglect and misrepresentation and an informal admonition for neglect.

Three judges thought that the Board's recommendation for Sheehy's disbarment should be approved. A fourth thought that a suspension from the practice of law for three years should be imposed. The five-member majority, however, ordered a suspension for two years, holding that the misconduct fell between that in *Haupt, supra*, where a three-year suspension had been imposed, and *Fogel, supra*, where the suspension was for a year and a day.

While precise comparisons are not possible, we believe that the nature and scope of misconduct here call for a suspension from the practice of law for a period of two years. We believe that *Haupt, supra*, in which the court approved a three-year suspension, provides guidance.[21] Haupt's conduct was somewhat more egregious than Respondent's, but it involved only two matters. We believe that the misconduct here, coupled with the mitigation factors and prior discipline, are close to that in *Sheehy, supra.*

Board on Professional Responsibility
By: /s/ Edward B. Webb, Jr.

---

**21.** Haupt intentionally failed to go forward in a divorce action, lied to his client in obtaining costs for service by publication, made no effort to obtain service, and falsely told Bar Counsel that he had obtained reinstatement of the divorce action and that he had not received payment for service of publication. Under another count, Haupt was found to have misrepresented to a Deputy Sheriff in Maryland that a female accompanying him to visit a client in a lock-up was his assistant when in fact she was the fiancee of the jailed client who was not permitted to receive visitors in the lock-up, other than his attorney and those assisting him. *Haupt, supra,* 422 A.2d at 769, *et seq.* Haupt had prior discipline in this jurisdiction in the form of a suspension for thirty days and an informal admonition. *Id.* at 771 n. 2.

Edward B. Webb, Jr.

All members of the Board concur in this decision except Mrs. King, Mrs. Williams and Mr. Freund.*

Date: August 18, 1984

* These members did not participate in the    Board's decision in this matter.