**In the Matter of Kent D. THORUP, a Member of the Bar of the District of Columbia Court of Appeals.**

**No. M–42–80.**

District of Columbia Court of Appeals.

Argued Oct. 7, 1980.

Decided July 7, 1981.

adopted the Hearing Committee's findings and now recommends that this court suspend respondent from the practice of law for six months. Concluding (1) that Bar Counsel failed to carry its burden of proof before the Hearing Committee, (2) that the burden of proof was improperly transferred to respondent, (3) that the gravamen of one of the charges was changed based on respondent's testimony, and (4) that the Hearing Committee based its findings on materials that were not before it as substantive evidence, we refuse to impose the recommended discipline and dismiss the petition.

On February 11, 1977, respondent was court-appointed to represent Mr. James A. Walton in connection with Walton's indictment on a charge of second-degree murder. Walton subsequently submitted a number of letters and documents to the trial court and the Bar complaining about the quality of respondent's representation of him. These communications alleged that respondent had failed to take action to prepare a defense despite the fact that Walton consistently maintained his innocence, provided respondent with the names of alibi witnesses, and had not been identified in two lineups. Walton further charged that respondent had improperly accepted a ring in payment for his services. *See* note 1, *supra.* Finally, Walton complained about respondent's failure to file a suppression motion on his behalf, and asserted that respondent's only action had been to negotiate a plea bargain.[2]

After investigation, and a finding of probable cause, Bar Counsel instituted formal disciplinary proceedings charging in count one that:

> On or about February 11, 1977, respondent was appointed to represent James A. Walton III in Criminal Case No. 12616–77. Respondent thereafter took no sub-

Joseph L. Mayer, Washington, D. C., with whom Edwin Yourman, Washington, D. C., was on the brief, for petitioner.

Nancy R. Beiter, Washington, D. C., with whom Charles Kubinski, Washington, D. C., was on the brief, for respondent.

Before NEBEKER and PRYOR, Associate Judges, and GALLAGHER, Associate Judge, Retired.*

NEBEKER, Associate Judge:

Respondent, a member of the Bar of this court, was found by a Hearing Committee of the Board on Professional Responsibility (the Board) to have neglected a legal matter entrusted to him, a violation of Disciplinary Rule 6–101(A)(3).[1] The Board has

---

\* Judge Gallagher was an Associate Judge of the court at the time of oral argument. His status changed to Associate Judge, Retired, on February 27, 1981.

1. This disciplinary rule violation, along with two others, was alleged in count one of the complaint issued by Bar Counsel. A second count, which alleged that respondent had im-

properly accepted payment from Walton in violation of DR 1–102(A)(3), was dismissed by the Hearing Committee for a failure of proof.

2. Respondent was removed from the case at Walton's request by Judge Hamilton on June 13, 1977.

stantive steps to prepare Mr. Walton's defense, though Mr. Walton maintained his innocence, was not identified at the two line ups in which he stood and had given respondent the names of witnesses who could verify his alibi. Respondent sought only to plea bargain with the [Assistant United States Attorney] prosecuting the case. The foregoing conduct was in violation of Disciplinary Rules 6–101(A)(3), 7–101(A)(1) and 7–101(A)(3).[3]

The matter was assigned to a Hearing Committee which convened on February 14, 1979, with respondent appearing *pro se*. The hearing commenced with Bar Counsel informing the Committee that the case against respondent on count one of the complaint would be made exclusively through the use of exhibits. Bar Counsel indicated that despite attempts to ensure Walton's presence at the hearing, his whereabouts were unknown. Respondent then moved to dismiss the charges based on Walton's failure to appear. Bar Counsel responded by urging that the exhibits would tend to bear out the allegations made by Walton. The exhibits included the communications from Walton mentioned earlier and a copy of the docket entries in Walton's criminal case.[4] Bar Counsel, responding to a question from the Hearing Committee Chairman, indicated that she expected the Committee to accept the truth of the matters asserted in the exhibits, including the communications from Walton. The following exchange then took place.

THE CHAIRMAN: Perhaps we should ask the Bar to give a brief summary of what it thinks is established by the evidence which has been submitted. Leaving aside the ring incident, I gather you want an opportunity to present a witness on that subject. It that right?

[BAR COUNSEL]: Yes, we do have a witness on that subject.

As to the first charge of the petition, that after Respondent was appointed to represent Mr. Walton in criminal case No. 12616, he thereafter took no substantive steps to prepare his defense. We feel that the docket sheet shows that at least no motions were filed. We feel that the letters which are Bar Exhibits 6A and B would tend to corroborate Mr. Walton's assertions that Mr. Thorup did not confer with him and prepare the case with him. We think that Mr. Walton's undated letter to Judge Hamilton, which is Bar Exhibit 3A, would tend to corroborate his later filed complaint just in that the assertions were the same and he was making the same complaint.

THE CHAIRMAN: Well, without regard to the corroboration, the assertion is that Mr. Thorup took no substantive steps to prepare a defense?

[BAR COUNSEL]: Right. And yet there were apparently steps to be taken since a later attorney took them and succeeded with them.

THE CHAIRMAN: All right. With regard to that allegation I suppose that we could ask Mr. Thorup whether he took any substantive steps and, if so, what they were, or if he didn't, why not. Would that be accurate, Mr. Thorup?

It doesn't seem to me that there is much testimony needed from the Bar side on that subject since the docket reflects what was apparently done. There is no reason why the Committee shouldn't accept that as a record of what was done in court, and then we would offer testimony as to whether there is anything else you did and if you didn't do anything else, why not. You know, why not?

MR. THORUP: I'd be very happy to respond to that.

---

**3.** DR 6–101 Failing to Act Competently.
  (A) A lawyer shall not:
       \*    \*    \*    \*    \*    \*
  (3) Neglect a legal matter entrusted to him.
DR 7–101 Representing a Client Zealously.
  (A) A lawyer shall not intentionally:
  (1) Fail to seek the lawful objectives of his client . . . .
       \*    \*    \*    \*    \*    \*

(3) Prejudice or damage his client during the course of the professional relationship . . . .

**4.** The docket sheet showed, in relevant part, that no suppression motion was filed while respondent was representing Walton, and that such a motion was filed by successor counsel and granted by the trial court.

After conferring off the record, the Chairman indicated how the Committee would deal with the exhibit evidence offered by Bar Counsel.

With regard to allegations which Mr. Walton makes about dealings or conversations which occurred between him and Mr. Thorup, the Committee is not prepared to accept or give any weight to the assertions of Mr. Walton's because they have not been subjected to cross-examination by Mr. Thorup and the Committee believes that Mr. Thorup should have the right to cross-examine those allegations.

With regard, however, to the issue of what steps were taken, we believe that at least a prima facie case of what was and was not done is established by the docket entries and Mr. Thorup is in position to give his version of any disagreement with what was actually done or not done and the Committee would, therefore, like to hear from Mr. Thorup with regard to whether he has, number one, any claim that anything was done by him that is not reflected by the docket. And, number two, if certain things were not done and he took a particular course, as to why he did that. Then, the Committee feels that it will be in a position to make a judgment about that, and, of course, we will give the Bar the right to present the evidence with regard to the ring incident and Mr. Thorup will have an opportunity to meet that with testimony.

Respondent objected, demanding to know whether his alleged failure to adequately represent his client was related to his failure to file a suppression motion, or to some other aspect of his handling of the case. The ensuing dialogue between the Chairman and Bar Counsel reveals that the failure to file a suppression motion, as reflected by the docket sheet, was the only thing that would be proven in support of the charge that respondent had taken no steps to prepare a defense.

THE CHAIRMAN: I think the allegation was that he did not adequately represent his client and is curious to know precisely what he should have done under the circumstances. We know that the motion was subsequently filed by his successor counsel, but I'm wondering if there is anything else other than that that we have to deal with?

[BAR COUNSEL]: No.

THE CHAIRMAN: That's the only thing?

[BAR COUNSEL]: That's the only thing that I'm prepared to show. I'll be quite candid with the Committee and with Mr. Thorup, as to the allegation that he never interviewed several witnesses, we tried and were not able to substantiate it. The contact person for those witnesses said that she didn't know them. So—

Bar Counsel made no showing on the allegations concerning alibi witnesses, lineup identifications, or plea bargaining. Nor was there any showing of underlying facts that would have supported the filing of a suppression motion. Nevertheless, the Hearing Committee accepted the docket entries as meeting Bar Counsel's burden of proving that respondent had violated the disciplinary rules as charged in count one of the complaint, and required respondent to explain.[5]

Ultimately, the Hearing Committee found, *inter alia*, that:

Respondent had no notes in his file and no recollection of what the Government's evidence was or of who the alleged witnesses were. Although the photoidentification was questionable, respondent did not talk to any of the people who were actually present at the photoidentification and had only the barest notes regarding what occurred at the photoidentification. Although respondent sought to justify his failure to file a motion to suppress the photoidentification as "a judgmental thing", he had no notes or

5. Respondent then testified and was cross-examined by Bar Counsel. However, the substance of respondent's testimony does not mer-

it attention here because of the nature of our holding.

recollection as to why he determined that the photoidentification could not be suppressed. Respondent did not recall what complainant's [Walton's] alibi defense was or whether he actually talked to his alibi witness.

Complainant gave Respondent the names of at least two persons considered to be alibi witnesses .... Respondent did not provide credible evidence that he did in fact talk with [one of the witnesses]. Indeed, he had neither independent recollection nor supporting notes. His conversation with [the other witnesses] was not more than a ten-minute query via telephone, and while it was his recollection that she was unable to provide him with any information so far as witnesses were concerned, he had no written record, e. g., notes, etc., regarding the contents of the conversation.

The Committee concluded based on these findings that respondent had neglected a legal matter entrusted to him in violation of Disciplinary Rule 6–101(A)(3). It further held that the evidence did not support the remaining charge in count one, alleging a violation of Disciplinary Rule 7–101(A)(1), (3), and that count two, alleging a violation of Disciplinary Rule 1–102(A)(3), should be dismissed. The Committee recommended that respondent be publicly censured for violating Disciplinary Rule 6–101(A)(3).

The Board adopted the findings of the Hearing Committee, but, after considering respondent's prior record of disciplinary violations, declined to adopt the recommended public censure discipline. Rather, the Board has recommended that respondent be suspended from the practice of law for six months.

There are a number of reasons why the Board's findings and recommendation cannot be given effect. Bar Counsel did not meet its burden of proof before the Hearing Committee, and the Committee impermissibly switched the burden to respondent to prove his innocence of the charge. Additional difficulties stem from the Hearing Committee's actions in amending the gravamen of the charge based on the testimony of respondent that he had no recollection or notes, and partially basing its findings on materials, namely written communications from Walton, which were not admitted as substantive evidence.

■ Disciplinary proceedings are adversary, adjudicatory proceedings. In as much as they are concerned with property rights of respondent-bar members, due process safeguards must be observed. *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *In re Colson*, D.C.App., 412 A.2d 1160 (1979); *In re Wild*, D.C.App., 361 A.2d 182 (1976). This means that procedural requirements analogous to those of other "contested cases" must be observed in attorney disciplinary cases.

In making its findings of fact, the Board is required to employ a clear and convincing evidence standard. *In re Smith*, D.C.App., 403 A.2d 296 (1979). The Board's own rules specify that:

> Except as provided in Section 7(1) of Rule XI of the Rules Governing the Bar prescribing probable cause hearings, the standard of proof at all hearings is clear and convincing evidence. Bar Counsel shall have the burden of proof, except in reinstatement proceedings. [Internal Rules of Board on Professional Responsibility chapter 8, No. 5.]

The courts have generally held that the burden of proof in attorney disciplinary proceedings is on the proponent. *Charlton v. Federal Trade Commission*, 177 U.S.App. D.C. 418, 543 F.2d 903 (1976).

In this case, the Hearing Committee accepted a copy of the docket from Walton's criminal case into evidence and ruled that the docket established a prima facie case against respondent. The docket showed only that respondent had failed to file a suppression motion and that a motion had subsequently been filed by successor counsel and granted by the trial court. The Committee then switched the burden to respondent to explain his actions. After hearing from him, the Committee found that his records and recollections were insufficient—an assumed misconduct neither charged nor founded in the Disciplinary Rules.

**1226**

We cannot accept petitioner's argument that Bar Counsel's burden was met by the mere introduction of the docket sheet. To adopt this position we would be required to engage in the type of second-guessing and Monday morning quarterbacking that we have consistently rejected in ineffective assistance of counsel cases. *Thornton v. United States*, D.C.App., 357 A.2d 429, 436 (1976); *Angarano v. United States*, D.C.App., 312 A.2d 295, 299 (1973). As in ineffective assistance cases, a judgmental or tactical error of this kind, revealed by later events or hindsight, does not in and of itself establish a disciplinary rule violation. A different holding would inevitably lead to a perceived requirement that attorneys "paper" the trial court with motions in all criminal cases in order to avoid possible disciplinary action. The Hearing Committee was not correct in accepting the docket entries as establishing the charge and then shifting the burden to the respondent to explain his actions. The Hearing Committee was likewise incorrect in utilizing respondent's testimony as the basis for modifying the gravamen of the charge against him to encompass his failure to have adequate memory and keep adequate notes. *See In re Ruffalo, supra.*

Finally, the Committee improperly used the letters written by Walton as substantive evidence. At the hearing, the Committee indicated that it would give no weight to the allegations in the letters. However, in its findings, the Committee made repeated references to a number of the allegations contained in the letters, and to respondent's failure to adequately explain his actions relative to them. Findings based in whole or in part on evidence not properly before the Hearing Committee may not be permitted to stand under our decision in *In re Dwyer*, D.C.App., 399 A.2d 1 (1979).

*Petition dismissed.*