### In re CONFIDENTIAL, Respondent.

### A Member of the Bar of the District of Columbia Court of Appeals.

### No. 94–BG–886.

District of Columbia Court of Appeals.

Argued March 2, 1995.
Decided Sept. 11, 1995.

H. Clay Smith, III, with whom Leonard H. Becker, Washington, DC, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Washington, DC, for the Board on Professional Responsibility.

Respondent argued, pro se.

Before STEADMAN, SCHWELB and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Respondent was charged by Bar Counsel with violating Disciplinary Rule ("DR") 9–103(A), which deals with commingling and misuse of clients' funds. The escrow which Respondent was charged with mishandling came about in connection with a real estate transaction in Maryland. Respondent was a principal to that transaction, one of the two sellers of the property. Respondent is not admitted to practice as an attorney in Maryland, a fact of which the complaining buyer was aware. On the particular facts of this case, we reject the exception of Bar Counsel to the order of the Board on Professional Responsibility dismissing the complaint against Respondent.

### I.

Respondent[1] and Douglas Edward Schwenneker ("Schwenneker") owned a par-

---

1. Respondent, admitted to the bar in 1949, retired from the federal government in 1986, at the age of 62. He then "did some general practice, nothing to brag about." He presently practices law "very little."

cel of real property in Frederick County, Maryland. Schwenneker had inherited his interest in the property from his father, Douglas Gary Schwenneker.

On August 11, 1989, Respondent and Schwenneker conveyed the property by deed to the complainant, John Hagerhorst, and his wife, Susan Marie Remmers ("the buyers"). Respondent testified that he called to complainant's attention the fact that the estate of Douglas Gary Schwenneker had not been probated, and that there was "a cloud on the title." Respondent also explained to complainant that he was not a member of the Maryland Bar, and could not practice in Maryland.

Thereafter, in order to assure that Schwenneker initiated and completed the probate of his father's estate, it was agreed between Schwenneker and the buyers that Schwenneker would pay into escrow the sum of $6,000. At the complainant's request, Respondent agreed to act as escrow agent. It is undisputed that this arrangement did not involve an attorney-client relationship between Respondent and any of the other parties.

Respondent testified that, following execution of an agreement handwritten by Respondent, Schwenneker asked Respondent whether he (Schwenneker) would receive interest on the escrow funds. Respondent told Schwenneker that he would pay him interest at the same rate that banks were paying interest. Respondent testified further that, because of his agreement to pay interest, he believed he was free to use the funds as a bank uses deposited funds. Since Respondent received no fee for serving as escrow agent, the use of the funds was his "sole method of getting any kind of compensation

from" the escrow arrangement. The complainant testified that he did not recall that Schwenneker had "asked for interest," but "assumed that the account would be an interest-bearing account."

Respondent explained in a letter to Bar Counsel that, because of his "oral agreement" with Schwenneker, "made in the presence of" the buyers, he "did not open a separate escrow account and they were advised that I was holding these funds with mine."

On August 14, 1989, Respondent deposited the $6,000 into his personal savings account at a credit union. On two occasions in 1990 during the course of the escrow, funds in that account fell below the outstanding balance remaining in the escrow.[2] In late 1992, Hagerhorst filed a complaint with Bar Counsel, asserting that Respondent had mishandled the escrow with respect to Hagerhorst's rights regarding the clearance of title. In the course of the investigation of the complaint, Bar Counsel decided to charge Respondent with a violation of DR 9–103.

The Hearing Committee expressly found that Respondent did not act dishonestly and that his failure to maintain the escrow funds in an identifiable bank account separate from his personal funds arose from a "sincere belief, albeit misguided and uninformed, that he had approval to use the funds because he agreed to pay interest on those funds to Mr. Schwenneker and because he was not taking a fee for his services." After concluding that Respondent's conduct in handling of the escrow funds resulted from simple negligence or its equivalent, the Committee recommended a six-month suspension pursuant to *In re Cooper*, 613 A.2d 938 (D.C.1992) (per curiam).[3] Bar Counsel excepted to this rec-

---

2. However, throughout his service as escrow agent, Respondent maintained liquid assets in his IRA and/or credit union accounts (excluding a $5,800 line of credit) exceeding the periodic escrow balances.

3. The Committee also found that several "usual" mitigating factors were present, namely, that Respondent had no prior disciplinary record, that Respondent admitted to the violation, that Respondent had cooperated with Bar Counsel, and that he indicated a willingness to pay the balance of the escrowed funds. Moreover, the Hearing

Committee found further grounds for mitigation based upon Respondent's belief that the funds were never in jeopardy in light of his other assets and credit line; the fact that Respondent had been a government attorney for 20 years and had not practiced in the private arena for nearly 30 years, that he practiced "very little" at the time of the hearing, and that he admitted he was unaware of the requirements of DR 9–103(A); and, the nature of the violation, which concerned a single incident in an otherwise clean forty-year record, "involved no rendering of legal advice,"

ommendation, arguing that Respondent's own testimony showed that his commingling and use of the money as his own was deliberate and that in such circumstances disbarment was mandated by *In re Addams,* 579 A.2d 190 (D.C.1990) (en banc).

A majority of the Board concluded that the disciplinary rule under which Respondent was charged, which spoke of "funds of clients paid to a lawyer or law firm," did not apply to Respondent's situation. Three dissenters were of the view that the rule extended to a fiduciary relationship at least of the type involved here.[4] Pursuant to the view of the majority, the Board entered an order dismissing the complaint. Bar Counsel filed an exception to this action of the Board pursuant to D.C.Bar R. XI, § 9(f).

## II.

■ The initial issue before us, and one which we agree with the Board majority is determinative here,[5] is the scope of application of the rule with whose violation Respondent is charged, DR 9–103(A). We deal here with that rule as it read at the time of the alleged violation;[6] to-wit:

> All funds of clients paid to a lawyer or law firm other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

> (1) Funds reasonably sufficient to pay bank charges may be deposited therein.

> (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

We have not previously been presented with the issue raised today: whether the proscriptions and corresponding sanctions of DR 9–103(A) apply when an attorney is not involved in an attorney-client relationship, and is not otherwise functioning in a professional capacity. In most cases reviewed by this court, the existence of an attorney-client relationship was evident, and thus DR 9–103(A) applied without any real question. *See, e.g., In re Hessler,* 549 A.2d 700 (D.C. 1988).

We look to the language of the rule itself. *See In re Baker,* 579 A.2d 676, 680 (D.C. 1990). The rule dictates that "[a]ll funds of *clients* paid to a *lawyer or law firm* ... shall

---

and was not accompanied by an intent to convert the funds to his own use.

4. The dissenters agreed with the Hearing Committee that the Respondent's actions here constituted only "simple negligence or the equivalent thereof." Hamilton P. Fox III, Chair of the Board, in a separate opinion concurred with the majority's view that the rule was inapplicable, but opined that if the dissenters were correct in this regard, the actions of Respondent must be viewed as deliberate and not simple negligence. Nonetheless, he would find the situation here to present those "extraordinary circumstances" which *Addams, supra,* 579 A.2d at 191, envisioned as justifying a sanction less than disbarment.

5. Accordingly, we do not reach Bar Counsel's argument that the facts here necessarily evidenced more than "simple negligence."

6. Effective January 1, 1991, this provision was replaced with Model Rule 1.15, which reads in relevant part:

A lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in a financial institution which is authorized by federal, District of Columbia, or state law to do business in the District of Columbia or the state in which the lawyer's or law firm's office is situated and which is a member of the Federal Deposit Insurance Corporation, or the Federal Savings and Loan Insurance Corporation, or successor agencies. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

We have no occasion here to determine whether this new version would apply to the events here.

be deposited in one or more identifiable bank account." DR 9–103(A) (emphasis added). On its face, it would be arguable that this language limits application of the rule to situations where there exists an attorney-client relationship and the attorney holds funds of that client. We have not applied the rule so narrowly, but we think that the use of the word "client," rather than "any individual," or some other choice of words, indicates that the drafters at most contemplated that this rule would apply only to transactions having a reasonable relationship to an attorney's conduct in his professional capacity, a limitation implicit in our prior holdings.

Thus, in two prior cases, we approved the imposition of discipline under DR 9–103(A) on attorneys who were acting as court-appointed trustees or conservators. In the mishandling of funds, they breached a fiduciary duty not only to the beneficiaries but to the court itself and prejudiced the administration of justice. *In re Burton*, 472 A.2d 831, 837 (D.C.), *cert. denied*, 469 U.S. 1071, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984); *In re Burka*, 423 A.2d 181, 187 (D.C.1980) (en banc). Likewise, more recently in *In re Patkus*, 654 A.2d 1291, 1291–92 (D.C.1995) (per curiam), we applied DR 9–103(A) to a misappropriation by an attorney from the estate of a minor whom the attorney was appointed to represent as guardian. With such court-appointed positions, an attorney unquestionably incurred the "high trust" described in *Addams, supra*, 579 A.2d at 193.[7]

The situation here is quite different. Not only was there no attorney-client relationship of any kind, but Respondent was not acting in his professional capacity. As the Hearing Committee explicitly found, it "involved no rendering of legal advice." He acted "without compensation, as an accommodation to the parties," and "undertook no role as an

attorney for the estate of the decedent." He was a principal to the transaction in question, presumably attempting to ensure its successful completion. His conduct involved a land sale in Maryland, a jurisdiction where Respondent was not admitted to practice law, as complainant well knew.

We think the Board majority accurately characterizes the situation here as "an ordinary, garden-variety common law fiduciary relationship ... where Respondent was acting informally as a stakes-holder in a private commercial transaction." The Board minority viewed the matter as "a *business* arrangement, involving a large sum of money and an important transaction, that Respondent reduced to writing in a formal agreement." (italics in original) This may somewhat overstate the magnitude of the circumstances, but in any event, given the wording of the rule, we think the critical question is whether the fiduciary relationship bore a reasonable relationship to Respondent's conduct in his professional capacity as an attorney admitted to practice in the District of Columbia, lacking here.[8] The rule cannot reasonably be read to control every fiduciary relationship entered into by an individual in whatever jurisdiction simply because he is admitted to practice in the District.[9]

We deal here with a particular disciplinary rule that happens to focus upon the attorney's conduct in a professional capacity. It is important to observe that other disciplinary rules may apply with full force even where an attorney is engaging in acts entirely unrelated to the practice of law. For example, DR 1–102(A)(4), now appearing as Rule 8.4(b), provided that "[a] lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." DR 1–102(A)(4). This rule extends to mis-

---

7. Other jurisdictions have held attorneys responsible, sometimes under differently worded disciplinary provisions, for commingling and misappropriation in situations to a degree less directly related to activities as an attorney, *see Burton, supra*, 472 A.2d at 836–37, but in no instance of which we are aware was the nexus as attenuated as here.

8. That Respondent drafted the agreement with legal terms and happened to be the only lawyer

among the principals did not in itself render his activities as professional in the circumstances here.

9. Here, Respondent's precise fiduciary obligations as an escrow agent presumably would be governed by Maryland law, but Bar Counsel has made no attempt to demonstrate that Respondent's conduct violated that law in any regard. *Cf.* D.C.Code § 45–1937(a).

conduct that is unconnected to the lawyer's practice of law. *See In re Kennedy,* 542 A.2d 1225, 1228 (D.C.1988). We recently relied on that rule to impose discipline where an attorney has mishandled fiduciary funds in circumstances arguably not subject to DR 9–103(A) or its present equivalent, Rule 1.15(a). *See In re Gil,* 656 A.2d 303. (D.C.1995) Likewise, in *In re Vogel,* 382 A.2d 275, 279 (D.C.1978) (per curiam), we imposed a sanction under DR 1–102(A) where an attorney, clearly acting as such, misused the escrowed funds of a third party who was not his client.[10]

But Respondent here was charged only with a violation of DR–9–103. For the reasons stated, we agree with the Board on Professional Responsibility that the rule cannot be extended to Respondent's conduct here. Accordingly, the Board on Professional Responsibility's dismissal of the complaint is

*Affirmed.*

---

10. We agree with the Board majority that this case is not controlling on the issue now presented.