**In re Stephanie Y. BRADLEY,**
**Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 288910).**

No. 12–BG–1205.

District of Columbia Court of Appeals.

Argued March 21, 2013.
Decided July 11, 2013.

---

Melvin G. Bergman, Greenbelt, MD, for respondent.

Traci M. Tait, Assistant Bar Counsel, with whom Wallace E. Shipp Jr., Bar Counsel, and Jennifer P. Lyman, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Before WASHINGTON, Chief Judge, THOMPSON, Associate Judge, and SCHWELB, Senior Judge.

PER CURIAM:

This disciplinary case is before us on exceptions filed by respondent, Stephanie Y. Bradley, to the Report and Recommendation of the Board on Professional Responsibility (the "Board"). The Board found that respondent committed one violation of Rule 1.1(a) (incompetence), one violation of Rule 1.1(b) (failure to employ requisite skill and care commensurate with practitioners in similar matters), one violation of Rule 1.3(a) (lack of diligence and zeal), one violation of Rule 1.3(b)(1) (intentional failure to seek clients' lawful objectives), one violation of Rule 1.3(c) (failure to act with reasonable promptness), and one violation of Rule 8.4(d) (serious interference with administration of justice) in her role as court-appointed guardian for Calvin Beard between 1994 and 2004 and Mary E. Brooks between 1999 and 2003. The Board also found that respondent intentionally testified falsely at her disciplinary hearing before the Hearing Committee. The Board recommends sanctioning respondent with a two-year suspension followed by a requirement that she show her fitness to resume the practice of law. Respondent takes exception to the Board's finding that she was deliberately dishonest in her testimony before the Hearing Committee and the Board's enhanced sanction based on that finding. For the reasons stated below, we adopt the Board's findings and recommended sanction and order a two-year suspension, with reinstatement conditioned upon a showing of fitness.

# I. FACTS

## A. Calvin Beard

In September 1994, respondent was appointed by the Superior Court of the District of Columbia to serve as the guardian for Calvin Beard, a man with developmental disabilities who was also the victim of a severe head trauma that left him hospitalized for several months. Once Mr. Beard's condition stabilized, respondent arranged for his transfer on December 2, 1994 to Cuppett & Weeks, a nursing home located three to four hours from the District of Columbia in Oakland, Maryland. After his transfer, respondent almost completely abandoned Mr. Beard in the nursing home for the next ten years, visiting him only twice within an eight-year period, participating in none of the quarterly care plan meetings with the nursing home staff from 1995 until Mr. Beard was discharged nine years later, and filing only three of the required semi-annual reports to the Superior Court, two at the beginning of the period and one eight years later.[1]

---

1. Superior Court rules mandate that, as Mr. Beard's guardian, respondent would "become or remain personally acquainted with the ward and maintain sufficient contact with the ward to know of the ward's capacities, limitations, needs, opportunities, and physical and mental health." D.C.Code § 21–2047(a)(1) (2001) (substantially similar to the version enacted in 1981). Respondent was also obligated to inform the Superior Court of Mr. Beard's condition "at least semi-annually." Id. § 21–2407(a)(5).

At the time of his injury, Mr. Beard was homeless and his family, who lived in Louisiana and Texas, did not know where he was. Respondent did not respond to repeated phone calls and letters from Mr. Beard's family, who independently located Mr. Beard in 1997, and ignored requests by the family to have him transferred to a nursing home facility near the family in Louisiana, as well as a direct transfer request from that nursing home. Mr. Beard's family testified that Mr. Beard wanted to move closer to them and had asked them to "get him out of there." In 2004, Mr. Beard's family retained counsel to have respondent removed as Mr. Beard's guardian and succeeded in transferring Mr. Beard to a halfway house in Texas near his brother. On July 13, 2004, Mr. Beard's brother filed a complaint against respondent with the Office of Bar Counsel.

## B. Mary E. Brooks

In January 1999, respondent was appointed guardian and conservator by the Superior Court of the District of Columbia for Mary E. Brooks, an elderly and infirm woman who had between $200,000 and $250,000 embezzled from one of her bank accounts by a purported family friend and caretaker, Ronnie Hall. Once appointed, respondent failed to prevent Mr. Hall from continuing to embezzle money from Ms. Brooks; failed to marshal, recover, and safeguard Ms. Brooks's assets; failed to file for benefits due Ms. Brooks under a life insurance policy and a civil service lump sum benefit; and failed to file Ms. Brooks's tax returns for the five years that respondent represented Ms. Brooks, resulting in unnecessary attachments and penalties. In 2003, Ms. Brooks's niece had her attorney, Steven Weinberg, petition to have respondent removed as personal representative of Ms. Brooks's estate and he was appointed in her stead. Mr. Weinberg sued respondent for the hundreds of thousands of dollars of losses sustained by Ms. Brooks and her estate during respondent's tenure, eventually recovering over $400,000. On May 24, 2004, after attempting on several occasions to obtain information from respondent without success, Mr. Weinberg filed a complaint against respondent with the Office of Bar Counsel on behalf of his client and as the successor guardian and conservator to Ms. Brooks and her estate.

## C. Testimony before the Hearing Committee

On July 29, 2010, the Office of Bar Counsel filed charges against respondent in response to the complaints against Mr. Beard and Ms. Brooks. At her hearing on March 1–3, 2011, respondent testified before the Hearing Committee that she "often" spoke with Mr. Beard by telephone and attended most of his quarterly care plan meetings by telephone. Respondent also testified that she visited Mr. Beard "usually, three times a year" on her way to her parents' vacation home in Massanutten, Virginia. Respondent's testimony was contradicted, however, by the nursing home staff who testified that respondent did not participate in any of the meetings for nine years, beginning in 1995. Mr. Beard's social worker could not recall a single time when respondent called or visited Mr. Beard in the eight years the social worker worked with him. There was also no evidence presented supporting such contacts with Mr. Beard or his caregivers; respondent never submitted petitions for compensation for legal services or reimbursement costs associated with these purported visits or long-distance telephone calls. Moreover, to reach the nursing home, appellant would have had to drive 130 miles out of the way on her route to her parents' vacation home.

Nevertheless, the Hearing Committee found that respondent "seemed honest" when she testified and found that there was nothing in her demeanor to suggest that her testimony was intentionally false, noting that she was trying to remember events from seven to fifteen years in the past. The Hearing Committee still concluded, however, that respondent's testimony about regularly checking on Mr. Beard's care was incredible and found respondent to have acted negligently and incompetently as guardian to Mr. Beard and Ms. Brooks. The Hearing Committee recommended that respondent receive a ninety-day suspension as a sanction.

The Board adopted most of the Hearing Committee's findings and conclusions, but concluded that the Hearing Committee's finding that respondent's false testimony was not intentional was "inconsistent with the substantial record evidence." The Board concluded that respondent intentionally lied to the Hearing Committee and that her false testimony before the Committee constituted a significant aggravating factor warranting a two-year suspension, with reinstatement conditioned upon a showing of her fitness to resume the practice of law. In recommending a two-year suspension, the Board also relied upon the fact that respondent had been informally admonished by Bar Counsel on three prior occasions, twice for incompetently and non-diligently handling probate matters for two separate clients during the same time period she was serving as a guardian for Mr. Beard and Ms. Brooks, and again several years later, after the present case began, for failing to provide a sufficient writing clearly setting forth the basis of her legal fee.

## II. FINDING OF INTENTIONAL FALSE TESTIMONY

■ Before this court, respondent admits that she testified falsely before the Hearing Committee about certain events involving Mr. Beard, but denies that she did so intentionally, arguing that any false statement contained in her testimony was inadvertent and due to the difficulty of "reconstructing a distant memory." Because the Hearing Committee found her testimony to be seemingly honest and sincere, respondent argues that the Board's ultimate finding, that she intentionally misrepresented facts to the Hearing Committee, was overreaching. Respondent contends that the Board improperly extrapolated only certain facts from the evidence in this case to support its findings that respondent intentionally testified falsely while ignoring the fact that the rest of her testimony was considered credible. Respondent further argues that, in its ultimate finding that she intentionally testified falsely, the Board ignored important factors taken into account by the Hearing Committee, namely her credibility, demeanor, candor, sincerity, and truthfulness in her overall testimony.

■ When examining a Report and Recommendation from the Board on Professional Responsibility, "[t]he scope of our review ... is limited." *In re Bailey,* 883 A.2d 106, 115 (D.C.2005) (internal citation and quotation marks omitted). We "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." D.C. Bar R. XI, § 9(h)(1). "[T]he Board has the power to make its own factual findings and forward them to the court [of appeals] with a recommendation," *In re Temple,* 629 A.2d 1203, 1208 (D.C.1993), however, "the Board must accept the Hearing Committee's evidentiary findings, including credibility findings, *if* they are supported by substantial evidence in the record." *In re Cleaver–Bascombe,* 892 A.2d 396, 401 (D.C.2006) (emphasis added). Although, in general, reviewing bodies accord considerable deference to credibility findings by a trier of

fact who has had the opportunity to observe the witnesses and assess their demeanor, "there are certain times when a [reviewing body] must override such a determination by examining evidence in the record that detracts from the [trier of fact's] finding." *Eilers v. District of Columbia Bureau of Motor Vehicles Servs.*, 583 A.2d 677, 685 (D.C.1990) (quoting *First Nat'l Bank of Bellaire v. Comptroller of the Currency*, 697 F.2d 674, 687 (5th Cir. 1983)). Moreover, the Board and this court owe no deference to the Hearing Committee's determination of "ultimate facts," which are really conclusions of law and thus are reviewed *de novo*. *See In re Anderson*, 778 A.2d 330, 339 n. 5 (D.C. 2001). "Ultimate facts" are those that have a clear "legal consequence." *See In re Micheel*, 610 A.2d 231, 235 (D.C.1992). Whether respondent gave sanctionable false testimony before the Hearing Committee is a question of ultimate legal fact that the Board and this court review *de novo*.

The Board did not err in concluding that respondent was intentionally untruthful in her testimony before the Hearing Committee in the matter involving Mr. Beard. Despite the Hearing Committee's finding that respondent's demeanor "seemed honest," there is no factual support in the record for the Committee's conclusion that she simply misremembered what had occurred in terms of her representation of Mr. Beard in this case. Although respondent testified that she visited him multiple times a year and that she was often in contact with the nursing home, she failed to produce any records, such as a compensation request or a nursing home visitor or telephone call log to support her representations. More importantly, her testimony was contradicted by social workers at the nursing home who testified that they could not recall a single instance when respondent called or visited Mr. Beard.

What further confirms for us that this was a knowing misrepresentation as opposed to a mere failure to remember, however, is the level of detail about the visits respondent paid to Mr. Beard in this case. Respondent testified to events—for example, traveling great distances to visit Mr. Beard in the nursing home multiple times a year over ten years—that are not the kind of events one simply misremembers. *See In re Ukwu*, 926 A.2d 1106, 1118 & n. 23 (D.C.2007) (attorney "could hardly have 'forgotten' that the [client] paid him in cash" such that an "unintentional failure to recollect a cash payment of $1,200, under the circumstances in which that payment was made, is improbable to say the least"). Moreover, respondent provided detailed testimony that she visited Mr. Beard while on her way to her parents' time share in Massanutten, Virginia, and that her visits lasted for about forty-five minutes and occurred just before eight o'clock in the evening, testimony which strongly undermines any finding that she simply misremembered the details of her visit. The fact that respondent would have had to drive 130 miles out of the way to reach Mr. Beard's nursing home on her route to her parents' vacation home further undercuts the conclusion that respondent was merely misremembering the circumstances involved in her representation of Mr. Beard.

Other than the passage of time, there is no evidence in the record to support a finding that respondent was merely confused and that her detailed testimony was inadvertent and not intentional. For example, no evidence was presented that respondent was a guardian for other clients at the same nursing home as Mr. Beard or that she represented clients in other nursing homes in the immediate area where Mr. Beard was living. It is one thing to fail to recall specific facts about important events after a significant amount of time has elapsed; it is another thing entirely to

have a specific memory of an event that never took place. While we generally defer to credibility determinations made by Hearing Committee members who are in a better position than either the Board or this court to assess the truthfulness of witness testimony, we are persuaded, as was the Board, that in this case, respondent's testimony was not the innocent product of a faulty memory but was an intentional falsehood designed to mislead the Hearing Committee.

## III. DISCIPLINARY ACTION

### A. Length of Suspension

■ Respondent also argues that the facts of her case do not warrant the two-year suspension recommended by the Board. We defer to the Board's recommended sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1).

On the facts of this case, a two-year suspension is warranted and within the range of acceptable outcomes. Respondent knowingly and repeatedly caused serious damage to her probate clients through her neglect. Because of respondent's neglect, Mr. Beard remained in a nursing home without any outside contact for years and missed an opportunity to be transferred to a nursing home located closer to his family. Respondent's neglect of Ms. Brooks resulted in her and her estate losing hundreds of thousands of dollars. The length of respondent's intentional neglect—ten years for Mr. Beard and five for Ms. Brooks—further aggravates the seriousness of her actions. Moreover, respondent had previously received three informal admonitions, two of which involved neglect of probate clients. *See In re Lyles,* 680 A.2d 408, 418 (D.C.1996) (citing cases and explaining that an attorney can be suspended for two years or more for serious neglect coupled with multiple other serious violations and prior discipline); *see also In re Steele,* 868 A.2d 146, 154 (D.C. 2005) (imposing three-year suspension for attorney who repeatedly failed to respond or respond truthfully to five clients and who neglected to file claims for or respond to ongoing litigation on behalf of the clients over several years causing all clients to lose their claims); *In re Mintz,* 626 A.2d 926, 928 (D.C.1993) (imposing two-year suspension for failing to file complaints for four clients and completely ignoring clients calls and letters); *In re Delate,* 598 A.2d 154, 161 (D.C.1991) (imposing a two-year suspension on a court-appointed conservator of estate who neglected to file yearly accountings, pay medical bills, cooperate with estate's new attorney, respond to Bar Counsel requests or attend any hearings, and who had been previously disciplined for two instances of similar behavior).

In addition, respondent's false testimony before the Hearing Committee "is a significant aggravating factor" that warrants imposing a sanction greater than the Hearing Committee's recommended ninety-day suspension. *See In re Cleaver–Bascombe,* 892 A.2d at 412–13 (remanding the Board's findings with instructions for a more severe sanction than the recommended ninety-day suspension if the attorney was found to have intentionally produced fraudulent documents and then deliberately testified falsely about it). Thus, we hold that the two-year suspension recommended by the Board is an appropriate sanction in this case.

### B. Fitness Requirement

■ Respondent also argues that the facts of her case do not warrant imposing a requirement that she demonstrate her fitness to resume the practice of law. We have held a fitness requirement to be appropriate where clear and convincing evidence creates "serious concerns about

whether [respondent] will act ethically and competently in the future, after the period of suspension has run." *In re Cater,* 887 A.2d 1, 22 (D.C.2005). "In most cases, it is the attorney's misconduct ... that casts the requisite serious doubt on the attorney's fitness." *Id.* at 24–25 (citation omitted). However, even if the misconduct "is not grave enough by itself to evoke such doubt," other "aggravating facts [may] justify enhancing the sanction of suspension with a fitness requirement." *Id.* at 25. In total, this court looks to five factors:

> (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent the future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.

*Id.* at 21 (citing *In re Roundtree,* 503 A.2d 1215, 1217 (D.C.1985)).

Here, respondent's severe, multi-year neglect of two clients is sufficient in itself to warrant the imposition of a fitness requirement. *See In re Boykins,* 999 A.2d 166, 177–78 (D.C.2010) (imposing fitness requirement where attorney negligently misappropriated client funds and neglected client matters); *In re Slaughter,* 929 A.2d 433, 448 (D.C.2007) (imposing fitness requirement and three-year suspension upon attorney who engaged in forgery and dishonest conduct during a three-year period); *In re Ukwu,* 926 A.2d at 1106 (imposing fitness requirement and a two-year suspension upon attorney who engaged in dishonest conduct in the representation of five clients and neglected the interests of one client). Moreover, this court has been especially supportive of fitness requirements when a respondent's conduct "evince[s] indifference (or worse) toward the disciplinary procedures by which the

Bar regulates itself," such as intentionally misleading Bar Counsel during its investigation. *In re Cater,* 887 A.2d at 25, 26 ("Even if we merely considered the three cases in which respondent has failed to respond to Bar Counsel's inquiries and the Board's orders, we would find a fitness requirement consistent with the dispositions in comparable cases....").

In addition, there is no record evidence that respondent recognizes the seriousness of her misconduct or has taken responsibility for her actions. Though she admits that she did not handle certain things well, her testimony before the Hearing Committee consisted largely of excuses as to her handling of Ms. Brooks's case and false testimony about her handling of Mr. Beard's care. In addition, respondent was previously admonished for her failure to competently handle two other probate matters during the same period when she was grossly neglecting Ms. Brooks's probate matter and Mr. Beard's care. These instances of misconduct also raise serious concerns about respondent's ability to act competently in the future. We therefore adopt the Board's recommendation that respondent be required to demonstrate that she is fit to practice law before being reinstated as a member of the District of Columbia Bar.

## IV. CONCLUSION

For the foregoing reasons, respondent Stephanie Y. Bradley is hereby suspended from the practice of law in the District of Columbia for a period of two years with her reinstatement conditioned on a demonstration that she is fit to resume the practice of law pursuant to D.C. Bar R. XI, § 16.

*So ordered.*