*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 17-BG-1091

IN RE NATHANIEL H. SPEIGHTS, RESPONDENT.

FILED 07/26/2018
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

A Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 952036)

On Report and Recommendation
Of the Board on Professional Responsibility
(BDN-253-10)

(Argued June 6, 2018                                    Decided July 26, 2018)

*Nathaniel H. Speights*, pro se.

*Hamilton P. Fox, III*, Disciplinary Counsel, with whom *Hendrik deBoer*, Senior Staff Attorney, was on the brief, for the Office of Disciplinary Counsel.

Before THOMPSON and MCLEESE, *Associate Judges*, and FARRELL, *Senior Judge*.

PER CURIAM: The Board on Professional Responsibility (the Board) has recommended that respondent Nathaniel H. Speights be suspended from the practice of law in the District of Columbia for two years, and be required to prove fitness before reinstatement. In arriving at that recommendation, the Board adopted the findings of fact and conclusions of law of a Hearing Committee which determined that respondent, while acting as personal representative of the Estate of

Arnold Lindsey, had violated Rules 1.1 (a), 1.1 (b), 1.3 (a), 1.3 (c), and 8.4 (d) of the District of Columbia Rules of Professional Conduct. Regarding sanction, however, the Board has taken into account discipline it previously recommended and this court imposed in *In re Speights*, 173 A.3d 96 (D.C. 2017) (*Speights I*), and on that basis recommends a suspension exceeding by one year the sanction recommended by the Hearing Committee. Respondent takes exception both to the sufficiency of Disciplinary Counsel's proof of the ethical violations, and to the fairness of the proceeding leading to the imposition of sanction.

In considering respondent's objections, we review *de novo* the Board's legal conclusions and related legal questions, but defer to the factual findings of the Hearing Committee and the Board "unless they are unsupported by substantial evidence" in the record. *In re Vohra*, 68 A.3d 766, 769 (D.C. 2013) (quoting D.C. Bar R. XI, § 9 (h)(1)); *see also In re Martin*, 67 A.3d 1032, 1039 (D.C. 2013). We will adopt the Board's recommended discipline "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9 (h)(1); *see also In re Pierson*, 690 A.2d 941, 946-48 (D.C. 1997). We are not persuaded by respondent's exceptions, and thus impose the sanction recommended by the Board.

**I.**

The disciplinary matter before us stems from what we had occasion five years ago to style "the long and tortuous probate administration of Arnold Lindsey's estate." *In re Estate of Lindsey*, No. 09-PR-1201, Mem. Op. & J. at 1 (D.C. May 29, 2013). After over nine years of litigation, the Superior Court in August 2009 removed respondent as the estate's personal representative, a position to which he had been appointed in August 2000. Respondent appealed from his removal and the simultaneous requirement that he reimburse the estate for $51,312.32 in lost interest because of his failure to diligently collect and distribute proceeds owed to the estate from the settlement of wrongful death and survival actions. In affirming the trial court's action, this court found "no grounds . . . for disturbing either the removal order or the order directing reimbursement." *Id*. We explained: "[Mr. Speights] offers no serious challenge to Judge [Rhonda] Reid Winston's well-substantiated conclusion that his repeated non-compliance with 'the [Superior] Court's Orders [requiring distribution of assets and related filing of accounts] and the attendant delays caused by [his non-compliance] prolonged the administration of [the] estate and . . . caused at least one of the decedent's heirs and his widow . . . to await that to which they were entitled,' and that in general he had 'failed to perform material duties of his office.'" *Id*.

In the ensuing disciplinary proceedings brought by Disciplinary Counsel, the Hearing Committee received documentary evidence from the lengthy probate proceedings and heard respondent's testimony, then found that respondent had committed each of the ethical violations charged, namely, failure to "provide competent representation to a client," D.C. R. of Prof. Conduct 1.1 (a), failure to serve as personal representative "with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters," *id*. 1.1 (b), failure to "represent a client zealously and diligently within the bounds of the law," *id*. 1.3 (a), and failure to "act with reasonable promptness in representing a client." *Id*. 1.3 (c). Further, it found that he had "[e]ngage[d] in conduct that seriously interferes with the administration of justice." *Id*. 8.4 (d). These violations, the Hearing Committee determined, were established by:

> proof by clear and convincing evidence of: [respondent's] prolonged delay in collecting . . . total payments of $575,000 from the three defendants [in the wrongful death and survival actions]; his claim that other lawyers represented the [e]state, after he himself had already discharged these lawyers; his extended failure – for approximately 17 months – to provide correct information to accountants for the [e]state; and his failures to comply with court orders, thereby prolonging administration of the [e]state . . . . Not only did [r]espondent's inaction over a significant period of time delay the collection of all the [settlement] funds for more

> than two years, he also failed to distribute them promptly even after he collected them. After that, he ignored the court-approved arbitration award [providing for distribution of the funds among estate members], and delayed the final resolution of the [e]state in a futile effort to further enrich himself with legal fees that the court had not authorized.

The Board, in concluding that substantial evidence in the record supported these findings, unanimously agreed with the Hearing Committee that respondent had "failed to make even the slightest effort to collect the amounts due to the [e]state (even failing to negotiate checks sent to [his] law firm), failed to distribute the assets (even when ordered by the court to do so), and multiplied and prolonged the proceedings, ultimately costing the [e]state over $50,000 in interest."

## II.

In August of 2000, because of a dispute between family members of the Lindsey estate, Judge Cheryl M. Long appointed respondent as personal representative for the estate, having decided that "the best interests of this estate as a whole require the appointment of a neutral member of the bar to serve as the sole fiduciary." Despite his appointment specifically as a "member of the bar," respondent argues to us, as he did to the Board, that in representing the estate he "did not perform the duties of *counsel* for the estate" (emphasis added), but instead

was a "stakeholder or common [law] fiduciary" who, acting only "in the capacity of" personal representative but not attorney, engaged other lawyers to pursue the survivorship/wrongful death action and to "implement[ ] the proceeds of the settlement" of that suit.

In thus seeking to absolve himself of the ethical violations charged, respondent tries to bring himself within our holding in *In re Confidential*, 664 A.2d 364 (D.C. 1995). There we held that an attorney who engaged in a "garden-variety common law fiduciary relationship" had not acted "in his professional capacity as an attorney admitted to practice" and thus was not subject to the ethical rules governing legal practice. *Id*. at 367 (internal quotation marks omitted). *In re Confidential*, to the contrary, demonstrates why respondent, as the court-appointed "fiduciary" we recognized him to be in *In re Estate of Lindsey*, *supra*, at 2 (quoting D.C. Code §§ 20-701 (a), -702 (2001)) – "responsible for 'tak[ing] possession or control of the decedent's estate' and taking 'all steps necessary for [its] management, protection, and preservation'" – may not shield himself for his failures behind the actions of the attorneys he employed and later discharged.

*In re Confidential* concerned an attorney charged with commingling and misusing clients' funds because of his actions as escrow agent in a real estate sale

of which he was a principal, one of two sellers of the property. In concluding that the ethical rule did not apply to his conduct, this court saw no indication of an "attorney-client relationship" or that the attorney "was . . . acting in his professional capacity" in serving only "as a stakes-holder" and principal in that private commercial transaction.[1] *In re Confidential*, 664 A.2d at 367. Indeed, the transaction took place in Maryland, where the attorney was not admitted to the practice of law. *Id*. at 364. The principle we gleaned from "our prior holdings" is that the ethical rule "would apply only to transactions having a reasonable relationship to an attorney's conduct in his professional capacity," *id.* at 367:

> Thus, in two prior cases, we approved the imposition of discipline . . . on attorneys who were acting as court-appointed trustees or conservators. In the mishandling of funds, they breached a fiduciary duty not only to the beneficiaries but to the court itself and prejudiced the administration of justice. . . . [M]ore recently . . . we applied [the same ethical rule] to a misappropriation by an attorney from the estate of a minor whom the attorney was appointed to represent as guardian. With such court-appointed positions, an attorney unquestionably incurred the "high trust" described in [*In re Addams*, 579 A.2d 190, 193 (D.C. 1990) (en banc)].

---

[1] The attorney's conduct "involved no rendering of legal advice"; he "acted without compensation, as an accommodation to the parties"; and (as the transaction implicated a decedent's estate) he "undertook no role as an attorney for the estate of the decedent." *In re Confidential*, 664 A.2d at 367 (internal quotation marks omitted).

*Id*. 664 A.2d at 367.

Respondent, although he engaged other attorneys to aid him, was positioned no differently than the just-cited attorney-fiduciaries in representing the Lindsey estate. That is to say, a lawyer in this jurisdiction who serves as the court-appointed personal representative of an estate is held to the same ethical standards as a lawyer representing a client. *E.g.*, *In re Hargrove*, 155 A.3d 375, 376 (D.C. 2017) (regarding attorney appointed as personal representative, court accepts Board's findings of fact as supported by substantial evidence and adopts its recommended sanction); *In re Fair*, 780 A.2d 1106, 1107 & n.1 (D.C. 2001) (same). Other jurisdictions are in accord. *E.g.*, *State ex rel. Okla. Bar Ass'n v. Mansfield*, 350 P.3d 108, 118 (Okla. 2015) ("Attorneys are subject to the [Rules of Professional Conduct] regardless of what role they play in the administration of an estate, and it makes no difference . . . that Respondent may not have technically represented any client with regard to the administration of the [estate]."); *In re Goldsmith*, 874 N.Y.S.2d 28 (N.Y. App. Div. 2009). Respondent, in short, was not engaged in "an ordinary, garden-variety common law fiduciary relationship" to the Lindsay estate, *In re Confidential*, 664 A.2d at 367, but held duties also "to the court itself" by virtue of his appointment as a member of the Bar. *Id.* He was thus answerable to the disciplinary system for his conduct.

**III.**

Besides mistakenly arguing that others than himself were responsible for the timely collection and distribution of funds owed the estate, respondent takes issue with his asserted failure to abide by the terms of the arbitration award that was entered in 2005 to resolve disagreements over the allocation of settlement proceeds and related fees for legal and personal representative services. Respondent argues that the trial court's order appointing the arbitrator "did not follow the law in the District" because "the parties" – including or especially heirs to the estate – "did not consent in writing to the appointment of a Master/Arbitrator" as required by court rules, thus making the award "non-binding" in nature. This argument comes too late. In the 2013 appeal from his removal as personal representative, respondent made the identical argument that defects in the appointment of the arbitrator excused his failure to adhere to the terms of the arbitration award. This court's rejection of that argument, and of all other objections to respondent's removal, cannot now be re-litigated. Moreover, our own review of the probate record reveals ample support for Judge Reid Winston's finding in her August 2007 order that the order appointing the arbitrator "was entered without any objection filed by any of the parties, including the personal representative," and for Judge

Jose M. Lopez's earlier October 2006 determination that "[n]o motion [objecting] has ever been filed as to the order for arbitration and as to the arbitrator's award." On the merits, the trial court appointed the arbitrator here as "master" to "perform duties consented to by the parties." Super. Ct. Civ. R. 53 (a)(2)(A). Contrary to respondent's suggestion, nothing in the rule requires this consent to have been in writing.

## IV.

Besides disputing the violations he was found to have committed, respondent broadly challenges the fairness of the proceeding conducted by the Hearing Committee. Relying mainly on *In re Thorup*, 432 A.2d 1221 (D.C. 1981), he argues that Disciplinary Counsel's failure to call any witnesses except respondent, instead relying on the record of the *In re Estate of Lindsey* probate proceedings, essentially denied him the "chance to brief or confront" the ethical misconduct and amounted to shifting the burden to him to refute them. We are not persuaded.

The Hearing Committee in *Thorup*, we concluded there, had required the respondent-attorney effectively to disprove a charge of client neglect based on "the

mere introduction of the docket sheet" from a case in which he had represented a criminal defendant, 432 A.2d at 1226:

> [T]he Hearing Committee accepted a copy of the docket … into evidence and ruled that [it] established a prima facie case against respondent. The docket showed only that respondent had failed to file a suppression motion and that a motion had subsequently been filed by successor counsel and granted by the trial court. The Committee then switched the burden to respondent to explain his actions. After hearing from him, the Committee found that his records and recollections were insufficient [ – ] an assumed misconduct neither charged nor founded in the Disciplinary Rules.

*Id*. at 1225.

The present case bears no resemblance to *Thorup*. Besides respondent's testimony, the record before the Hearing Committee included some thirty-four exhibits introduced by Disciplinary Counsel and another thirty-six submitted by respondent – in the aggregate, the great bulk of the hearing-transcripts and court orders that made up the years-long administration of the Lindsey estate. During those trial court proceedings, respondent was given full opportunity to dispute the claims that arose about his failure to timely collect and distribute the settlement proceeds. As just one example, before Judge Reid Winston removed him as personal representative, she referred the matter to the auditor-master who conducted an evidentiary hearing in which respondent and his then-counsel

participated; only after receipt of the master's report did the judge order respondent's removal. Respondent cannot credibly argue that those proceedings, and testimony by the same witnesses, had to be reproduced wholly or in part at the disciplinary hearing before the Hearing Committee could assess his behavior in light of the misconduct charges and find, as it did, that Disciplinary Counsel proved them by clear and convincing evidence. Although respondent's testimony was an opportunity for him to justify his actions (or inactions) and offer mitigating circumstances if a sanction was deemed necessary, at no point was it made to appear that his own "records and recollections" would be required to do service for a failure of proof by Disciplinary Counsel. *Thorup*, 432 A.2d at 1225.

We reject, as well, respondent's claim that it was improper for the Hearing Committee, and later the Board, to evaluate the truthfulness of the testimony he gave at the hearing and consider what the Committee found were false statements as an aggravating factor in deciding what sanction to recommend. This is not, as respondent suggests, a case of "amend[ing]" the disciplinary charges based on "the testimony of the accused." The relevance to proper sanction of "false testimony before the Hearing Committee," *In re Cleaver-Bascombe*, 892 A.2d 396, 412 (D.C. 2006), has long been recognized, *see In re Kanu*, 5 A.3d 1, 15, 17 (D.C. 2010); *In re Goffe*, 641 A.2d 458, 464-66 (D.C. 1994), and only clairvoyance would enable

Disciplinary Counsel to charge such conduct in a way "known [to the respondent] before the proceedings commence."

**V.**

We consider, finally, the Board's recommendation of a two-year suspension coupled with a required showing of fitness. The Hearing Committee, besides the fitness requirement, had recommended a one-year suspension, expressly not taking account of the then-pending matter in *Speights I* as prior discipline. The Board in turn followed the rule of *In re Thompson*, 492 A.2d 866, 867 (D.C. 1985), and considered together the two separately docketed matters pending "at different steps of the disciplinary process" in deciding what sanction to recommend.

The Board and the Hearing Committee both recognized that, in the Hearing Committee's words, the normal range of sanctions we have imposed is from thirty days to six months for "cases involving incompetence, neglect, conduct seriously interfering with the administration of justice, and prior discipline . . . ." But both bodies found a special aggravating factor here in the Committee's finding, which the Board accepted, that portions of respondent's testimony at the present

disciplinary hearing "were simply incredible."[2]  Moreover, the Board considered it "especially troubling that [r]espondent testified falsely to the Hearing Committee [in this matter] in April 2016, *after* the *Speights I* Hearing Committee found in June 2015 that he testified falsely there and recommended an increased sanction as a result" (emphasis by Board).  In *Speights I*, this court too noted the Hearing Committee's finding that "respondent's explanations for his actions [a combination of mishandling and neglecting the client's personal injury suit were] unworthy of credence," and we found this "evasiveness and dishonesty" to be an aggravating factor justifying the enhanced sanction recommended.  173 A.3d at 100, 102.

---

[2]  Specifically, the Hearing Committee found "intentionally false" testimony in (1) respondent's assertions:  (a) that the lawyers he had originally retained to assist him as personal representative "remained the lawyers for the [e]state" despite court findings that he had discharged them; (b) that Judge Lopez's order appointing an arbitrator "falsely reported . . . that all parties had consented to arbitration" (a determination we have found amply supported by the probate record); (c) that he had no duty to collect one settlement payment (from a company named Affordable Light and Sound) over the eighteen-month period between when it was due and when it was paid; and (d) that the auditor-master had made a number of "false findings" despite approval of those findings by Judge Reid Winston and implicitly this court on appeal; and, beyond these, in (2) respondent's "conflicting," indeed contradictory, testimony about his receipt (and not) of the check from Affordable Light and Sound.

"Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *In re Hallmark*, 831 A.2d 366, 371 (D.C. 2003) (internal quotations omitted). Here the Board found most apposite our prior decision in *In re Bradley*, 70 A.3d 1189, 1195 (D.C. 2013), in which we imposed a two-year suspension on an attorney whose testimony included "an intentional falsehood designed to mislead the Hearing Committee" and who beforehand had "knowingly and repeatedly caused serious damage to her probate clients through her neglect." *Id*. The Board recognized that respondent's "two matters [*Speights I* and this case] did not involve the sort of extreme, intentional neglect of multiple court-appointed clients at issue in *Bradley*," but nonetheless found comparability in that respondent "neglected two client matters, resulting in prejudice to both clients, refused to accept responsibility for his misconduct, and most importantly, has testified falsely to two different Hearing Committees."[3] The *Bradley* court cited previous cases in which serious

---

[3] Respondent argues that the Hearing Committee's findings of false testimony in reality sought to sanction him "for his alleged failure to admit his wrong doing" – for continuing to maintain in good faith, *inter alia*, that he served as trustee but not counsel to the estate once he retained other lawyers, who never formally exited the case, to serve as counsel. But while "[a] respondent may certainly litigate vigorously against [Disciplinary] Counsel," *In re Martin*, 67 A.3d at 1055 n.25, the statements the Hearing Committee found respondent had made falsely were in the face of contrary findings of the Superior Court upheld by this court in *In re Estate of Lindsey*, and included assertions of mendacity by court

(continued…)

neglect combined with aggravating circumstances had resulted in suspension for two years, namely:  *In re Lyles*, 680 A.2d 408, 418 (D.C. 1996); *In re Mintz*, 626 A.2d 926, 928 (D.C. 1993); *In re Delate*, 598 A.2d 154, 161 (D.C. 1991).  *See also In re Alexander*, 496 A.2d 244 (D.C. 1985); *In re Thorup*, 461 A.2d 1018 (D.C. 1983); *In re Sheehy*, 454 A.2d 1360 (D.C. 1983).

Altogether, then, we conclude that the Board's recommended sanction is consistent with our prior decisions concerning similar conduct and not otherwise unwarranted.  D.C. Bar R. XI, § 9 (h)(1).  Respondent asserts, and we have no reason at all to question, that for many years he engaged in the honorable, unblemished practice of law in this jurisdiction.  But the pattern of conduct leading to his removal as personal representative in this case, together with his recent prior discipline and proven lack of candor in two disciplinary proceedings, persuades us that the sanction recommended by the Board is the correct one.

---

(…continued)
officers including the auditor-master.  The Board could properly conclude that at some point an attorney's obdurate refusal to accept facts bearing on his accountability for neglect reflects as much on his present fitness to practice law as does outright falsehood.  *See In re Martin*, 67 A.3d at 1053 (citing as a factor relevant to sanction "whether the attorney has acknowledged his . . . wrongful conduct").

Accordingly, respondent Nathaniel H. Speights is hereby suspended from the practice of law in the District of Columbia for a period of two years effective from the date of his interim suspension in this matter, and must demonstrate fitness as a condition of resuming practice. For purposes of reinstatement, respondent's suspension will be deemed to run from the date he files the affidavit required by D.C. Bar R. XI, § 14 (g).

*So ordered.*